No. 79-3

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

FRED BEYER,

Plaintiff and Appellant,

vs.

FIRST NATIONAL BANK OF DILLON,

Defendant and Respondent.

---

Appeal from: District Court of the Fifth Judicial District,
In and for the County of Beaverhead,
Honorable Frank E. Blair, Judge presiding.

Counsel of Record:

For Appellant:

Hooks and Budewitz, Townsend, Montana

For Respondent:

Frank M. Davis, Dillon, Montana
W. G. Gilbert III, Dillon, Montana

---

Submitted on briefs: April 3, 1980

Decided: JUN 20 1980

Filed: JUN 20 1980

*Thomas J. Kearney*
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Plaintiff appeals from a judgment entered in the District Court of the Fifth Judicial District, the Honorable Frank E. Blair, presiding, in favor of defendant First National Bank of Dillon (Bank), in an action by plaintiff to recover on a check allegedly improperly negotiated by the Bank and deposited in a joint account controlled by plaintiff's then wife.

On August 8, 1974, Checking Account No. 2-227-7 was opened at the Bank in the names of plaintiff Fred Beyer and his then wife, Peggy Beyer. The account was designated as a joint tenancy with right of survivorship. The wife, Peggy Beyer, executed the signature card which evidenced the account and made an opening deposit therein of money and checks belonging to herself and her husband. She caused to be ordered, and thereafter received, printed personal checks embossed "Fred and Peggy Beyer, 35 North Idaho No. 2, Dillon, Montana 59725."

Peggy Beyer executed the signature card required by the Bank which evidenced the account. Plaintiff did not sign the card; however, a typed notation on the card read, "Fred Beyer in the hospital, will sign card later." Fred Beyer never did sign the signature card.

From the date the account was opened on August 8, 1974, until it was closed on June 30, 1975, plaintiff and his wife used the checking account. Monthly bank statements received by plaintiff and his wife at their home address indicated normal checking and deposit activity over a period of some ten months while the account was open. Plaintiff himself, however, did not write any checks against the account.

Both plaintiff and his wife individually and jointly deposited funds to the account from various sources, including checks payable solely to Peggy Beyer as wages, unemployment insurance, and hospitalization insurance, checks payable solely to plaintiff as wages, and checks payable to plaintiff and to his wife, which were received from plaintiff's parents. The District Court found that all the deposits made and checks drawn on this account were made with the knowledge, consent and permission of plaintiff. Plaintiff's objection to the manner in which the account was utilized apparently developed when the couple started having marital difficulties.

On or about May 10, 1975, plaintiff and his wife received from an insurance company a check payable to them and to an attorney in Great Falls, Montana. This check represented the proceeds of the settlement of a personal injury claim for injuries which plaintiff had sustained in a July 25, 1974, motorcycle accident. As a result of this accident, plaintiff was hospitalized until mid-October 1974, during which time his wife opened Checking Account No. 2-227-7 on August 8, 1974. The litigation resulting in this settlement was instituted by plaintiff and his wife as plaintiffs against Peggy Beyer's insurance company under the uninsured motorists coverage of their motor vehicle liability policy. The parties jointly, by a written contract, employed a law firm to prosecute the action on their behalf.

Following the receipt of the insurance company check, plaintiff endorsed the same, as did his wife, and returned it to their attorney, who was also a payee, to be negotiated by the attorney and disbursed by him pursuant to the contract of employment.

On or about May 13, 1975, plaintiff and his wife received a check from their attorney in the amount of $5,899.00, which was their share of the proceeds of the personal injury settlement. The check was payable to "Fred Beyer and Peggy Beyer." It was deposited to the account by Peggy Beyer without being endorsed by her or by the plaintiff. The Bank negotiated this check after a Bank employee stamped the check with the following endorsement:

> "Deposited to the account of the within named payee in accordance with payee's instruction. Absence of the endorsement guaranteed by the First National Bank of Dillon, Montana."

The trial court found that this deposit was made with the specific knowledge and consent of plaintiff.

The court further found that when the $5,899 check was received, the couple agreed that it would be deposited to their account at the bank and checks drawn for the payment of their outstanding bills and for the opening of a joint savings account. Peggy Beyer immediately proceeded to draw checks on the account in payment of the bills. These checks represented payments for rent, medical bills, hospital bills, bills for local services and supplies, credit card invoices charged to both parties, and the repayment of a $1,780.10 loan which was owed by Peggy Beyer on the family automobile, all of which aggregated the sum of $3,333.51. At this time, Peggy Beyer opened a joint savings account to which she deposited the sum of $1,000. The signature card evidencing the savings account was likewise signed only by Peggy Beyer, but the trial court found that it was opened with the knowledge, consent and at the direction of plaintiff. Likewise, the court found that Peggy Beyer signed all the checks in payment of the outstanding bills with plaintiff's consent and at his direction.

Marital difficulties had arisen between Fred and Peggy Beyer, and on May 28, 1975, two weeks after the arrival of the $5,899 check, plaintiff returned to the State of Pennsylvania where he had formerly resided. He did not return to Montana until the trial of the dissolution of his marriage in the summer of 1976. In the meantime, plaintiff's wife went to Pennsylvania in an unsuccessful effort to effect a reconciliation, purchasing an airline ticket for her transportation in the amount of $198 with a check drawn on the account. While in Pennsylvania, plaintiff's wife gave him various unspecified sums of money, and she also sent him a check for $150 after she returned to Montana.

Plaintiff consulted with legal counsel in Pennsylvania and called the Bank regarding the $5,899 check. He thereafter obtained counsel in Montana, who made a formal written demand upon the Bank in December 1975. Plaintiff filed his complaint in this action on May 6, 1977, and trial was held on April 3, 1979. The District Court issued its findings of fact and conclusions of law on July 6, 1979, and its judgment in favor of defendant Bank on July 17, 1979.

The District Court found that the aggregate benefit which plaintiff realized from the insurance settlement of $5,899 was the sum of $4,681.51, consisting of $3,333.51 for the payment of outstanding bills, including the loan on the family automobile, $1,000 for the joint savings account deposit, $198 for the airline ticket, and the $150 check. Plaintiff acknowledged that he had received the benefit of $1,831.52 for the payment of outstanding bills and expenses, but he denied receiving any benefit from the remainder, in particular, the repayment of the $1,780.10 car loan, the $1,000 deposit opening the joint savings account, and the

$150 check. The court also found that at no time during the ten-month existence of the joint account did plaintiff ever object to the manner in which it was utilized, either with respect to the depositing of funds or the withdrawal of funds, and that he affirmatively participated in both the depositing and disbursement of funds.

It was not disputed that Fred Beyer never signed the signature card or wrote any checks against the account. Gary Kruger, cashier of the defendant Bank and the only bank employee called as a witness at trial, testified that Fred Beyer, not having signed the signature card, was never authorized to draw checks on Account No. 2-227-7 and that Peggy Beyer was the only person who could draw a check on the account. Nevertheless, when asked whether the Bank would have honored a check written on the account by Fred Beyer, Kruger stated, "possibly we would have." He admitted, however, that it would not be good banking practice and that there would be no way of knowing whether the signature was a forgery or not. This testimony was apparently the basis of that part of the trial court's Finding No. 9, which states:

"While the Plaintiff never signed a check himself, the Court finds that he could have, and that any such checks drawn by him would have been paid, because of the manner, habits and usage of the account for some ten months."

Kruger also testified that Fred Beyer did not endorse the $5,899 check and that he did not authorize or instruct the Bank to deposit that check to Account No. 2-227-7. Plaintiff likewise testified that he did not authorize the Bank to endorse the $5,899 check, but the Bank nevertheless stamped its guaranteed endorsement on the check and negotiated it.

-6-

The District Court concluded that Checking Account No. 2-227-7 was established and owned by plaintiff and his wife and that both were entitled to draw funds on the account. Furthermore, the proceeds of the $5,899 check were the joint property of plaintiff and his wife as tenants in common, and it was deposited to Account No. 2-227-7 to the credit of both payees.

The District Court concluded that plaintiff was equitably estopped from denying his joint and beneficial ownership of the account and the proceeds deposited and withdrawn therefrom by reason of his affirmative acts, conduct and silence and the Bank's reliance thereupon to its detriment. The District Court also concluded that plaintiff was guilty of laches and that he had sustained no damages, so that to grant him relief would constitute unjust enrichment. In the alternative, the court also found that plaintiff made a gift to Peggy Beyer to the extent of his co-ownership of the moneys deposited to the account. From this judgment, plaintiff appeals.

The issue on appeal is whether the judgment of the District Court is supported by substantial credible evidence.

Although the check at issue in this case is a nonnegotiable instrument payable to "Fred Beyer and Peggy Beyer," section 30-3-805, MCA, and the commission comments to that section of the Uniform Commercial Code make it clear that Chapter 3 of the U.C.C. applies to transactions involving this check, with the exception that there can be no holder in due course of such an instrument. In particular, this check is governed by section 30-3-116, MCA, which provides:

"Instruments payable to two or more persons:
An instrument payable to the order of two or
more persons:

-7-

"(a) if in the alternative is payable to any one of them and may be negotiated, discharged or enforced by any of them who has possession of it;

"(b) if not in the alternative is payable to all of them and may be negotiated, discharged, or enforced only by all of them." (Emphasis added.)

Since the check is payable only to "Fred Beyer and Peggy Beyer" together, subsection (b) applies and "both must endorse in order to negotiate the instrument, although one, of course, may be authorized to sign for the other." Comment to the Uniform Commercial Code, section 30-3-116, MCA. The mere fact that the copayees are husband and wife does not authorize one to sign for the other:

"Normally, when a check is made payable to husband and wife, it is considered to be payable to them jointly and the check must be endorsed by both of them . . ." Murray, Joint Payee Checks--Forged and Missing Endorsements, 78 Comm. L. J. 393, 395 (1973).

It is undisputed that neither Peggy Beyer nor Fred Beyer endorsed the $5,899 check, and that it was deposited to Account No. 2-227-7 by Peggy Beyer and stamped with the Bank's guaranteed endorsement.

As a general proposition,

"Courts in a number of cases have held or recognized that a cashing or collecting bank which pays a check drawn to joint payees, other than partners, without obtaining the authentic endorsement of all such payees, is liable to a nonsigning payee for the value of his interest in the check, unless the nonsigning payee has authorized or ratified such payment." Annot., 47 A.L.R.3d 537, 543 (1973).

See Edwards Co. Inc. v. Long Island Trust Co. (1973), 75 Misc.2d 739, 347 N.Y.S.2d 898.

The depository or collecting bank's liability to a non-endorsing copayee has been founded on a conversion theory:

> "A bank's liability for paying a check drawn
> to joint payees without requiring the authentic
> endorsement of all such payees usually has been
> based upon the view that the payment of such
> a check without the statutorily prescribed en-
> dorsements constituted a conversion of the in-
> strument or was a breach of a quasi-contractual
> duty." Annot., 47 A.L.R.3d 537, 540 (1973).

Peoples Nat'l Bank v. American Fidelity Fire Ins. Co. (1978),
39 Md.App. 614, 386 A.2d 1254; Trust Co. of Columbus v.
Refrigeration Supplies, Inc. (1978), 241 Ga. 406, 246 S.E.2d
282, on remand 146 Ga.App. 825, 247 S.E.2d 542; Berkheimers,
Inc. v. Citizens Valley Bank (1974), 270 Or.App. 807, 529
P.2d 903; Federal Deposit Insurance Corp. v. Marine Natl.
Bank (5th Cir. 1970), 431 F.2d 341; Cf., Insurance Co. of
North America v. Atlas Supply Co. (1970), 121 Ga.App. 1, 172
S.E.2d 632. In particular, this result has been reached
under the Uniform Commercial Code, section 30-3-419, MCA,
which provides: "(1) An instrument is converted when: . . .
(c) it is paid on a forged endorsement." With reference to
this section, it has been observed:

> "While the Code rule is strictly applicable
> only to cases involving payment on a forged
> endorsement, it may be applied by analogy
> to those cases wherein a check was paid
> without requiring the endorsement of a co-
> payee. . ." Annot., 47 A.L.R.3d 537, 541
> (1973), citing Federal Deposit Ins. Corp.
> v. Marine Natl. Bank (5th Cir. 1970), 431
> F.2d 341.

See also Peoples Natl. Bank v. American Fidelity Fire Ins.
Co. (1978), 39 Md.App. 614, 386 A.2d 1254. The same result
was reached in Berkheimers, Inc. v. Citizens Valley Bank
(1974), 270 Or.App. 807, 529 P.2d 903, on general principles
of law relating to conversion under Section 1-103 of the
U.C.C.

> "The rationale of such decisions appears to
> be that since joint-payee instruments require
> the endorsement of all payees under § 3-116(b),
> payment on the endorsement of fewer than all

payees is an exercise of dominion and control over the instrument inconsistent with the rights of the owner, and results in liability for conversion." Annot., 47 A.L.R.3d 537, 542 (1973).

Section 30-3-419(3), MCA, however, gives the depository or collecting bank a defense to a suit for conversion and limits the bank's liability where the bank acts in good faith and in accordance with reasonable commercial standards:

"... a representative, including a depository or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands."

See Murray, supra, 78 Comm. L. J. at 402; Comment 5 to section 3-419 of the U.C.C.; and sections 30-4-201(1) and 30-4-202(1)(a), MCA.

Therefore, if the defendant-respondent, First National Bank of Dillon, acted in good faith and in accordance with reasonable commercial standards when it permitted Peggy Beyer to deposit the $5,899 check payable to "Fred Beyer and Peggy Beyer" in Checking Account No. 2-227-7 without the endorsement of either payee, the Bank would not be liable to Fred Beyer beyond the amount of any proceeds remaining in the Bank. Since the record indicates that neither the instrument itself nor any proceeds of it remained in the Bank at the time of suit, the Bank would not be liable at all if it acted in good faith and in accordance with reasonable commercial standards.

The Bank's good faith has not been challenged, and since the account to which the check was deposited was in fact the joint account of Fred and Peggy Beyer, as the trial court found, the Bank has complied with reasonable commercial standards.

Without again reciting the facts in this case, we find the conclusions of the District Court to be supported by substantial evidence. Arrowhead, Inc. v. Safeway Stores (1978), ___ Mont. ____, 587 P.2d 411, 35 St.Rep. 1830. In particular, there is substantial evidence to support the conclusion that plaintiff-appellant Fred Beyer is equitably estopped from denying his joint and beneficial ownership of Account No. 2-227-7, by virtue of his acknowledgement and use of the account over a period of time, and the Bank's reliance thereupon in crediting the $5,899 check to that account. Section 26-1-601(3), MCA; Howeth v. D. A. Davidson & Co. (1973), 163 Mont. 355, 517 P.2d 722; City of Billings v. Pierce Packing Co. (1945), 117 Mont. 255, 161 P.2d 636; Mundt v. Mallon (1938), 106 Mont. 242, 76 P.2d 326, 329. Appellant cannot be heard to complain that he lacked authority to draw checks on the account when he could have remedied that situation by the simple expedient signing of the signature card.

The judgment of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

-11-