Loretta Diane QUINTANA, a/k/a Diane
Loretta Quintana, Respondent.

v.

ALLSTATE INSURANCE
COMPANY, Appellant.

No. C7–85–127.

Court of Appeals of Minnesota.

Nov. 26, 1985.

Timothy J. McLarnan, Gjere, McLarnan, Hannaher, Vaa, Skatvold & McLarnan, Moorhead, for respondent.

Ronald H. McLean, Serkland, Lundberg, Erickson, Marcil & McLean, Ltd., Fargo, N.D., for appellant.

Heard, considered and decided by SEDGWICK, P.J., and LESLIE and NIERENGARTEN, JJ.

## OPINION

LESLIE, Judge.

Allstate Insurance Company appeals from a judgment entered in favor of respondent Loretta Diane Quintana. Respondent sought to recover certain proceeds from an insurance settlement between Allstate and Rudolph Quintana, who was respondent's husband at the time. The trial court awarded respondent $8,000, one-half of the amount of insurance proceeds. We affirm.

## FACTS

Respondent and her husband purchased a used mobile home for $5,000 in March 1981. They purchased insurance for the mobile home from an Allstate agent in Billings, Montana. In their application for insurance, they represented the purchase price of their mobile home as $9,975. They also represented that they had made improvements worth ten percent of the purchase price. The policy became effective March 17, 1981.

On August 26, 1981, respondent and her husband had a fight at their mobile home in Billings. As a result of the incident, Rudolph Quintana was placed in jail, and was subsequently moved to a hospital because of a heart problem. That night respondent left for Barnesville, Minnesota with the couple's two children.

Rudolph Quintana returned to the mobile home on approximately August 29, 1981. He performed some repair work on the trailer's air cooler unit and then went to two bars in Billings. When he returned later that evening, he found that the mobile home had been destroyed by fire.

Respondent learned of the fire in early September 1981, and called Keith Bunker, an Allstate sales agent, to get more information regarding the fire. Bunker advised her to call Richard Rigney, a senior claims representative for Allstate, who had been assigned the claim.

Rigney contacted Rudolph Quintana on September 1, 1981. Rigney found him to be cooperative, and they determined the value of the fire loss to be $8,000 for the trailer contents and $8,000 for trailer repair. Rigney tried to contact respondent in Barnesville so that she could help determine the value of the destroyed contents, but he was unable to reach her. Rigney testified that during the course of negotiating with Rudolph Quintana, he learned of the domestic fight and that respondent and the children had left Billings.

After investigators determined that the fire was not the result of arson, Rigney received authority on October 5, 1981 to issue an $8,000 draft for the mobile home and an $8,000 draft for its contents. On that same day, Rigney called Rudolph Quintana and informed him that the drafts would be available that afternoon, that they would be made out to Rudolph and Diane L. Quintana, and that both of them

were required to sign a proof of loss. Rudolph Quintana informed Rigney that his wife was flying into Billings that night, and could sign the checks and the proof of loss at that time. Later that day, Rigney gave Rudolph Quintana the two drafts and the proof of loss, which Rigney requested be returned with respondent's signature. Rigney never received the proof of loss.

In mid-October 1981, respondent called Rigney to ask whether he had issued any checks on the claim. Respondent informed Rigney that she had not received any of the money and that she had never returned to Montana. At trial, she testified that she did not sign either of the drafts, that the endorsements in the name of Diane L. Quintana were not her signature, and that she never received any of the insurance proceeds. The drafts were payable through United Bank of Denver National Association, Denver, Colorado. The drafts were paid by Clarks Fork National Bank of Fromberg, Montana.

Four months after Rigney issued the drafts, respondent commenced divorce proceedings in Minnesota. Under the terms of the decree of dissolution entered in May 1982, she was to receive the proceeds from the insurance drafts. Respondent filed suit in October 1982 to collect the insurance proceeds from Allstate. At trial, she argued that Allstate either breached a contractual duty or was negligent in distributing the insurance proceeds.

Allstate moved to dismiss the case on the basis of forum non conveniens. The trial court denied Allstate's motion on the grounds that respondent was a Minnesota resident and Allstate was a corporation doing business in Minnesota. The court determined that respondent should not be forced to proceed in a foreign jurisdiction just because Allstate sought to pursue possible indemnity claims.

The trial court concluded that Allstate was required to pay Diane Quintana $8,000. The trial court reasoned that because she did not receive her share of the insurance proceeds, Allstate breached its contractual duty. The court found that Allstate's obli-

gation was not discharged when Allstate issued the drafts to Rudolph Quintana because the forgeries of respondent's signature were inoperative as to her. The trial court also found that Allstate failed to use due care and was negligent in the settlement of respondent's portion of the claim because Rigney knew that the couple had separated and was having marital difficulties. The court determined that the policy was not void due to an alleged misrepresentation as to price on the insurance application because Allstate did not meet its burden of proving the insureds' intent to deceive and defraud or an increased risk of loss. Finally, the trial court found that the forged endorsements were not a superceding cause in the negligence claim and that comparative negligence was inapplicable to contract actions.

Rudolph Quintana died on January 26, 1984.

### ISSUES

1. Did the trial court abuse its discretion in refusing to dismiss the case on the basis of forum non conveniens?

2. Did appellant discharge its contractual duty to respondent?

3. Did the trial court err in finding that respondent did not intend to misrepresent appellant in the application for insurance?

### ANALYSIS

1. The trial court denied appellant's motion to dismiss this action on the basis of forum non conveniens because it found that respondent was a Minnesota resident and that appellant did business in Minnesota and used Minnesota courts to protect its rights. The trial court reasoned that although the claim arose in Montana, the convenience issue was not dispositive because respondent had some right to choose her forum and appellant was not seriously inconvenienced by having to defend in Minnesota, especially since it admitted liability under the policy.

The forum non conveniens rule is "an equitable rule based on the proposition that

a court in its discretion may decline to exercise jurisdiction over a transitory cause of action when it appears that the action may more equitably be tried in some other available and competent court." *Johnson v. Chicago, Burlington & Quincy Railroad Co.*, 243 Minn. 58, 62, 66 N.W.2d 763, 767 (1954) (footnote omitted). The Minnesota Supreme Court has enumerated several factors for a court to consider in determining whether to apply the rule of forum non conveniens. These factors focus on the practicalities of bringing a lawsuit in one state versus another. "But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Hague v. Allstate Insurance Co.*, 289 N.W.2d 43, 46 (Minn. 1978) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947)).

Appellant relies on *Silversmith v. Kenosha Auto Transport*, 301 N.W.2d 725 (Iowa 1981), to support its claim that this case should have been dismissed because the trial court's lack of subpoena power and jurisdiction over the Montana bank that accepted the two drafts and paid over the forged endorsements hampered Allstate's presentation of its evidence. In *Silversmith*, an Iowa resident brought a negligence action in Iowa against a Wisconsin defendant, a registered foreign corporation in Iowa, for injuries arising from an accident that occurred in Wyoming. Although the trial court refused to decline jurisdiction on the ground of forum non conveniens, the Iowa Supreme Court reversed, finding that "apart from the plaintiff's residence, there is not a single factor which provides a nexus between this action arising in Wyoming and Iowa." *Id.* at 728. The court observed that the accident occurred in Wyoming and all the key witnesses were located there, that Wyoming had subpoena power over a necessary third party and witnesses, that Wyoming had different substantive law than Iowa, and that an action based on the plaintiff's same claim had been initiated in federal court in Wyoming. *Id.*

■ We find *Silversmith* distinguishable. Minnesota and Montana do not have different substantive law. We know of no action pending in federal district court in Montana. Although Allstate would like to subpoena the Montana bank to pursue indemnification, no other witnesses or necessary parties reside in Montana. Allstate could have deposed witnesses in Montana and presented the deposition testimony in Minnesota. Because Allstate conducted business in Minnesota and respondent resided in Minnesota, we hold that the trial court did not abuse its discretion in refusing to dismiss the case on the basis of forum non conveniens.

2. Appellant's next contention is that when it delivered to Rudolph Quintana the two drafts payable to "Rudolph and Diane L. Quintana," it discharged its contractual duty to respondent. Drafts made payable to the order of two persons are subject to a provision of Article 3 of the Uniform Commercial Code, which provides as follows:

An instrument payable to the order of two or more persons

(a) if in the alternative is payable to any one of them and may be negotiated, discharged or enforced by any of them who has possession of it;

(b) *if not in the alternative is payable to all of them and may be negotiated, discharged or enforced only by all of them.*

U.C.C. § 3–116 (1977) (emphasis added); Minn.Stat. § 336.3–116 (1984) (same). The purpose of this provision appears to be to protect the interests of all parties entitled to payment under the instrument. *See Schranz v. I.L. Grossman, Inc.*, 90 Ill. App.3d 507, 512, 45 Ill.Dec. 654, 659, 412 N.E.2d 1378, 1383 (1980).

■ Respondent testified at trial that the endorsements on the two drafts were not hers. The Code provides that " [a]ny unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it." Minn.Stat. § 336.3–404(1) (1984). Appellant offered no evidence to show that respondent authorized

her husband to sign for her. The mere fact that co-payees are husband and wife does not authorize one to sign for the other. *Beyer v. First National Bank of Dillon,* 188 Mont. 208, 612 P.2d 1285, 1288 (1980); *see Frank v. Illinois Farmers Insurance Co.,* 336 N.W.2d 307, 311 (Minn. 1983). Thus, because the drafts in question were not payable in the alternative, they were neither negotiated nor discharged by the unauthorized forged endorsements.

■ The drafts in this case stated that they were "payable thru United Bank of Denver National Association, Denver Colorado." In such a case, the bank becomes a collecting bank and the insurance company is both drawer and drawee. *See* Minn.Stat. § 336.3–120 (1984); Murray, *Drafts "Payable Through" Banks,* 77 Comm.L.J. 389, 390 (1972). Because Allstate was both the drawer and drawee of the drafts, respondent, as the aggrieved co-payee, may maintain a suit against it on a conversion theory. Minn.Stat. § 336.3–419 (1984) reads in part as follows:

(1) An instrument is converted when

\* \* \* \* \* \*

(c) it is paid on a forged indorsement. (2) In an action against a drawee under subsection (1) the measure of the drawee's liability is the face amount of the instrument. In any other action under subsection (1) the measure of liability is presumed to be the face amount of the instrument.

The official comment to § 3–419 of the Uniform Commercial Code provides that

payment on a forged indorsement is not an acceptance, but that even though made in good faith it is an exercise of dominion and control over the instrument inconsistent with the rights of the owner, and results in liability for conversion.

U.C.C. § 3–419 comment 3 (1977). Thus, the statute creates in respondent an absolute right to recover upon proof that the

drafts were paid over forged endorsements.[1]

We find the case of *Lee v. Skidmore,* 49 Ohio App.2d 347, 361 N.E.2d 499 (1976), to be persuasive. Lee and the Skidmores were the named insureds on a fire insurance policy. The premises insured under the policy were partially destroyed by fire, and Lee claimed that the insurance company failed to reimburse her for the loss. *Id.* at 347, 361 N.E.2d at 500. The insurance company responded that it issued a draft for $2,125, payable through a bank, in the name of Lee and the Skidmores to cover the fire damage. The insurance company argued that by issuing the draft, which was cashed by the Skidmores over Lee's forged endorsement, it satisfied its obligation to Lee. *Id.* at 348, 361 N.E.2d at 500. Based on statutes identical to Minn. Stat. § 336.3–116 and § 336.3–419, the Ohio Court of Appeals reversed the trial court's dismissal, and held that payment of the draft did not discharge the instrument and that such payment constituted a conversion of the instrument entitling Lee to damages. *Id.* at 347, 361 N.E.2d at 501.

■ Appellant claims that a general principle of contract law provides that payment of an entire obligation to one of several joint obligees discharges the obligation, and tender to one obligee constitutes tender to all. *See* 2 S. Williston, A Treatise on The Law of Contracts § 343 (3d ed.1959); Restatement of Contracts § 130(a) (1932). Although pre-existing principles of law and equity may supplement the Uniform Commercial Code, they cannot displace particular provisions of the Code. Minn.Stat. § 336.1–103 (1984). Furthermore, the basic purposes of the Code are "to simplify, clarify and modernize the law governing commercial transactions" and "to make uniform the law among the various jurisdictions." Minn.Stat. § 336.1–102 (1984). Thus, we will not resort to pre-Code law in order to circumvent the

1. Because respondent did not contest the amount of damages awarded, we do not address

that issue.

purpose and effect of the Code in this case.[2]

Appellant also argues that the trial court erred in determining that Allstate negligently breached its duty of due care to respondent and that the intervening forgeries did not remove liability. Because we conclude that the trial court was correct in holding Allstate liable to respondent on the negotiable instruments, we need not reach the issue of whether it was also liable on a negligence theory.

3. Allstate's final argument is that respondent is barred from recovery because the Quintanas misrepresented the value of their mobile home. Minn.Stat. § 60A.08, subd. 9 (1984) reads as follows:

> No oral or written misrepresentation made by the assured, or in his behalf, in the negotiation of insurance, shall be deemed material, or defeat or avoid the policy, or prevent its attaching, *unless made with intent to deceive and defraud, or unless the matter misrepresented increases the risk of loss.*

(emphasis added). Allstate argues that the Quintanas represented the purchase price of the mobile home to be $9,975 when in fact they paid only $5,000, and that this material misrepresentation increased the risk of loss.

The burden of proving the intent to deceive or defraud or that the misrepresentation increased the risk of loss is on the insurer. *Craigmile v. Sorenson,* 248 Minn. 286, 295, 80 N.W.2d 45, 51 (1956). The trial court found that Allstate failed to offer any evidence to support claims of an intent to deceive or an increase in the risk of loss. After reviewing the record, we agree that appellant failed to meet its burden of proof.

**DECISION**

The trial court did not abuse its discretion in denying appellant's motion to dismiss the case on the basis of forum non conveniens.

The payment of drafts over forged endorsements failed to discharge the instruments as to the appellant as drawer-drawee, and such payment constituted a conversion of those instruments, entitling respondent as co-payee to damages.

The trial court did not err in finding that respondent did not intend to misrepresent appellant in the application of insurance.

Affirmed.

---

**2.** The Restatement (Second) of Contracts acknowledges a change in the pre-Code principle as follows:

> § 299. Discharge by or Tender to One Joint Obligee
>
> *Except where the promise is made in a negotiable instrument* and except as stated in

§ 300, any joint obligee, unless limited by agreement, has power to discharge the promisor by receipt of the promised performance or by release or otherwise, and tender to one joint obligee is equivalent to a tender to all. Restatement (Second) of Contracts § 299 (1981) (emphasis added).