MUELLER *v.* FIDELITY-BALTIMORE
NATIONAL BANK

[No. 70, September Term, 1961.]

630

*Decided November 13, 1961.*

*Motion for rehearing filed November 22, 1961, denied December 20, 1961.*

The cause was argued before HAMMOND, PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.

*Peter B. Turney* for the appellant.

*William O. Doub,* with whom were *Bartlett, Poe & Claggett* on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

The appellant, Lucile Mueller, sued the Fidelity-Baltimore

National Bank to recover the amount of two checks issued to her and her late husband, Harold E. Mueller (who died insolvent), by the estate of his father, Ernest Mueller, which the bank had cashed for the husband after he had forged the wife's endorsements. The checks represented the husband's portion of the proceeds of sale of real estate he had recently inherited from his father. The chancellor ruled that the wife had shown no right to any of the sales price which the checks represented and exonerated the bank by a summary judgment in its favor, since the person entitled to the proceeds of the check, the husband, had in fact received them. The wife appealed.

Filed as exhibits in the case by the bank were the will of the husband's father, and a copy of an agreement among his three children for the sale of the real estate owned by their father and the division of the proceeds among them, signed by Lucile Mueller and Harold E. Mueller. The bank, in accordance with Maryland Rule 421 a, requested the wife to admit for the purpose of the case the genuineness of the will and agreement and that "the statements in the aforesaid documents * * * are in accord with the facts."

The matters as to which admission was requested were conceded since the wife has never denied them or detailed her inability to admit or deny them. Rule 421 b. Also before the court was the wife's affidavit in support of her motion for summary judgment and affidavits of the lawyer for the father's estate. The wife's affidavit set forth that in the course of the administration of the estate of her father-in-law, Ernest Mueller, "she was asked to execute and did execute a deed conveying title to certain New Jersey real property theretofore owned by the said Ernest Mueller; that although she was led to believe that a distribution of money from the said estate would be made to her or jointly to her and her said husband, she has never received any such distribution"; that she has learned of the two checks payable to her and her said husband but has never seen them; that she has seen photostatic copies of the checks; and that her purported endorsements on them were not made by her and are not genuine.

The affidavits of the New Jersey lawyer who was counsel

for the estate of Ernest Mueller deposed that a deed dated April 3, 1957, conveyed fee simple property in New Jersey, of which Ernest Mueller was seized at his death, and that two checks drawn by him as counsel for the administratrix c. t. a. to Ernest Mueller to the order of Harold E. Mueller and Lucile Mueller on April 17, 1957, and May 28, 1957, in the respective amounts of $3,863.70 and $104.45, represent the "net proceeds of sale of that portion of the said property" to which Harold E. Mueller was entitled as heir or devisee "and Lucile Mueller for her dower interest in said property." He also swore that the checks were to distribute "to the payees the amounts to which they were collectively entitled in the said estate"; that the checks have been paid by the drawee bank and returned to him and bear on their backs what purports to be the handwritten endorsements of "Harold E. Mueller" and "Lucile Mueller," as well as the stamped endorsement of the Fidelity-Baltimore National Bank.

The real issue in the case is a narrow one. The appellant argues that, under the law of New Jersey, Harold Mueller and Lucile Mueller were joint owners of the checks (New Jersey apparently does not recognize a tenancy by the entirety in personal property.), and that joint payees of negotiable instruments are presumed to be owners in equal shares. She says, further, that upon the death of one joint payee the survivor becomes the owner of the whole interest in the instrument. The appellee does not seriously dispute these propositions, which we accept for the purpose of this decision, but says the presumption of equal ownership may be rebutted, and this would seem to be the law. *In re Morrison's Estate*, 261 N. W. 436 (Iowa); 11 C. J. S. "Bills and Notes" Sec. 659, p. 92. Cf. *Hoover v. Haller*, 21 N. W. 2d 450 (Neb.). The wife agrees that if she is shown to have no interest in the monies represented by the checks, she was not harmed by the forgeries and cannot recover because the person in fact entitled to the proceeds of the check was paid. Further, she agrees that if she has no interest, the court could properly enter summary judgment against her although the bank had not moved for summary judgment. Maryland Rule 610 d (1). Cf. *Frush v. Brooks*, 204 Md. 315, 322; *Hamburger v. Standard Lime, Etc. Co.*, 198 Md. 336.

The case, as we see it, turns on whether it has been shown that the wife released her dower for the consideration to be paid to her husband alone and therefore should herself never have been made a payee on the checks. It is generally held that even if she herself receives no consideration, a wife's release of dower is valid and effectual if supported by consideration to her husband, although she may exact a consideration inuring to herself as a condition of releasing her dower. *Jarboe v. Severin,* 85 Ind. 496; *Moore v. Hudson,* 240 S. W. 383 (Ky.); *Watkins v. Minor,* 183 N. W. 186 (Mich.); 28 C. J. S. "Dower" Sec. 65, pp. 138-9. An agreement that a wife is herself to be compensated is not usually implied, and it has been held that the presumption is that the inducement for her release is the consideration paid her husband, at least in the absence of a special explicit agreement to the contrary. *Murray v. Cazier,* 53 N. E. 476 (Ind.) (rehearing den. 55 N. E. 880); *Jarboe v. Severin, supra.* It is clear that in New Jersey inchoate dower is a "present fixed and vested valuable interest" in property within the protective jurisdiction of equity, *Hampton v. Hampton Holding Co.,* 111 A. 2d 761, 764 (N. J.), and undoubtedly Mrs. Mueller could have exacted a set price for releasing her dower. The question is, did she? We think not.

Harold Mueller, the husband, and his two sisters, the three being heirs of their lately deceased father, reached an agreement integrated in a writing dated June 9, 1956, which recited the possible invalidity of their father's will and the lack of a power of sale therein, that the children desired to sell the decedent's real estate and to divide the proceeds equally, "thereby amicably settling all differences that may exist as to the distribution of the proceeds of sale of any and all real estate," and then provided (as far as here pertinent) as follows:

> 1. That the real property of Ernest Mueller, the father, be sold at the earliest possible time.
>
> 2. That the net proceeds (after debts, taxes, commissions and legal fees) "be divided equally among Edna M. Bracone, Harold E. Mueller and Christine Mueller, share and share alike."

3. That the parties to the agreement "agree to execute any and all contracts for the sale of said real estate and to execute any and all deeds and other papers necessary to consummate and convey title to a subsequent purchaser."

Lucile Mueller, the appellant, signed the agreement as a party. At the time she did so she was living with her husband, and no reason appears why the usual presumption that her agreement for the sale of her father-in-law's New Jersey real estate and to join in any and all contracts of sale and deeds, with one-third of the proceeds going to her husband, was voluntary, should not be indulged.

Mrs. Mueller, as we noted, conceded for the purposes of this case that the statements and recitals in the agreement were in accord with the facts. In effect, she has therefore conceded that Harold Mueller, her husband, was to receive one-third of the net proceeds of the sale of any New Jersey real estate and she was to receive nothing. A wife who voluntarily releases her dower is not entitled to any part of the proceeds of sale of the real property involved. *Watkins v. Minor, supra; In re Madsen's Estate,* 259 P. 2d 595 (Utah).

It is agreed that the New Jersey law controls as to whether dower in New Jersey lands has been released. *Block v. P. & G. Realty Co.,* 124 A. 372 (N. J. Eq.). The statutes of that State as to how a wife can release dower, N. J. S. A. (1954 Supp.), Secs. 37:2-18 and 18-1, have essentially the same effect as those of Maryland, Code (1957), Art. 45, Sec. 12 and Sec. 20. *Hill v. Boland,* 125 Md. 113, held that an agreement between husband and wife, executed with all the formalities required of a valid deed of real estate, as was the agreement of June 9, 1956, in the case before us, wherein the wife released to the husband all rights to and interests in his real property, including dower therein, and agreed to execute any necessary deeds, was effective to release her dower under Sec. 12 of Art. 45.

We see no difference in effect and result between Mrs. Mueller's execution and acknowledgment of her agreement that the father-in-law's real estate be sold and one-third of the proceeds distributed to her husband, and the agreement in

*Hill v. Boland.* She released her dower by her execution of the 1956 agreement and, having agreed therein to execute all subsequent necessary contracts and deeds, she could not make a claim to that dower right the basis of being paid for executing a deed in 1957. *Ingersoll v. Martin,* 58 Md. 67.

In any event Mrs. Mueller does not allege or swear to any specific agreement. She says she was "led to believe" she, or she and her husband jointly, would receive a "distribution" from her father-in-law's estate. She does not say how much, who so led her to believe, or when, or that the leading was the consideration for the execution of the deed. She does not say that the "distribution" was to be the proceeds or part of the proceeds of the sale of the real estate. Her allegations are entirely too vague to constitute an explicit agreement that her release of dower was to be paid for by a part of the proceeds of sale.

We think the husband, Harold E. Mueller, was entitled exclusively to the funds he received as a result of the cashing of the checks and, since the person entitled to the money got it, no harm in a legal sense resulted to Mrs. Mueller from the bank's action in cashing the checks on forged endorsements. *Coplin v. Maryland Trust Co.,* 222 Md. 119. Judgment was correctly entered for the bank.

*Order affirmed, with costs.*