33295. TRUST COMPANY OF COLUMBUS v.
REFRIGERATION SUPPLIES, INC. et al.
33296. FIRST NATIONAL BANK OF COLUMBUS v.
REFRIGERATION SUPPLIES, INC. et al.
33297. BARTLEY v. REFRIGERATION SUPPLIES,
INC.

Marshall, Justice.

We granted the applications for certiorari of three of the parties to *Refrigeration Supplies, Inc. v. Bartley,* 144 Ga. App. 141 (240 SE2d 566) (1977). The primary issues in the case concern the respective liabilities of a collecting (or cashing) bank and a drawee (or payor) bank to the joint payee of a check which was cashed without the payee's endorsement. Relying upon its earlier decision in *Ins. Co. of N. A. v. Atlas Supply Co.,* 121 Ga. App. 1 (4) (172 SE2d 632) (1970), the Court of Appeals held that the banks were liable. The order of the trial court was reversed insofar as

---

it granted the defendant banks' motions for summary judgment. However, the Court of Appeals affirmed the trial court's denial of the plaintiff's motion for summary judgment, holding that there remained questions of fact with reference to the amount of damages.

The facts of this case are remarkably similar to the facts of *Ins. Co. of N. A. v. Atlas Supply Co.*, supra. There, pursuant to an agreement of the parties, a general contractor issued checks jointly payable to the subcontractor and materialman. The checks were cashed by the subcontractor without the materialman's endorsement. The bank cashing the checks, the collecting bank, was held liable to respond in damages to the materialman.

In the present case, the general contractor, who was also the owner of the property (an apartment complex), issued checks jointly payable to the subcontractor and materialman. However, there was no understanding or agreement of the parties that the property owner-general contractor would pay the materialman. Had there been an understanding or agreement, the consideration flowing to the property owner-general contractor would have been found, among other things, in the materialman's forbearance from filing a lien on the property. In the absence of such an agreement, it would appear that the property owner-general contractor, not being in privity of contract with the materialman, would not be personally liable to him. *Robertson v. Laughlin Insulation Co.*, 134 Ga. App. 509 (215 SE2d 274) (1975). Therefore, under the facts present here, the property owner-general contractor was under no legal obligation to include the materialman as a payee on the checks; therefore, his payment of the materialman was, in a strict legal sense, a gratuitous payment. Since the checks on which suit is being brought would be unenforceable by the payee against the maker, are those checks likewise unenforceable by the payee against the banks paying the checks without the payee's endorsement? This is the question on which we granted certiorari. Having determined that the banks are liable to the nonsigning payee for accepting and paying the checks without the payee's endorsement, we answer the question in the negative.

In Division 4 of *Ins. Co. of N. A. v. Atlas Supply Co.*, supra, the Court of Appeals noted that the precise question of the collecting bank's liability to a nonendorsing payee was a novel one in Georgia. In holding the bank liable, the Court of Appeals relied upon the decision of the Appellate Court of Illinois in U. S. Fidelity &c. Co. v. Peoples Nat. Bank, 24 Ill. App. 2d 275 (164 NE2d 497) and the decision of the Supreme Court of Utah in Pacific Metals Co. v. Tracy-Collins Bank &c. Co., 21 Utah 2d 400 (446 P2d 303). In Pacific Metals Co. v. Tracy-Collins Bank &c. Co., supra, the drawee bank sought to avoid liability to the nonendorsing joint payee, a materialman, by arguing that the drawer, a general contractor, had included the nonendorsing payee as a joint payee on the check as an act of courtesy for which the drawer received no consideration. The Supreme Court of Utah concluded that this argument was without merit, holding that a joint payee suing a bank for cashing a check without its endorsement need not show that it gave consideration for issuance of the check. "[I]t is the maker's exclusive privilege to designate the payees of his checks; and it is not the prerogative of one who accepts and pays it to question whether the maker had sufficient reason for doing so. However, in accepting the check, it is his duty to comply with the direction of maker to 'pay the order of' the named payees. It is elementary negotiable instruments law that in order to fulfill that requirement all payees must endorse." 21 Utah 2d 402, 403. We agree. Under Code Ann. § 109A-3—116, unless a check payable to the order of two or more payees is payable to those payees in the alternative, a bank is not authorized in accepting and paying it except upon the endorsement of all the payees.

Payment of the check without the endorsement of a joint payee is an exercise of dominion and control over the check inconsistent with the nonsigning payee's rights amounting to a conversion. F. D. I. C. v. Marine Nat. Bank of Jacksonville, 431 F2d 341 (3-6) (5th Cir. 1970). The situation is analogous to payment of the check on a forged endorsement, which Code Ann. § 109A-3—419 (1) (c) acknowledges to be a conversion. U. S. Fidelity &c. Co. v. Peoples Nat. Bank, supra. We recognize the rule that an action for conversion can be brought only by one who has

title, possession, or a right to possession of the property. *Southern Exp. Co. v. Sinclair,* 130 Ga. 372 (60 SE 849) (1908); *McElroy v. Williams Bros. Motors,* 104 Ga. App. 435 (121 SE2d 917) (1961). We hold that inclusion of the party as a joint payee on the check gives him a right to possession of the check.

In arriving at this decision, we have not overlooked Code Ann. § 109A-4—407(c): "If a payor bank has paid an item over the stop payment order of the drawer or maker or otherwise under circumstances giving a basis for objection by the drawer or maker, to prevent unjust enrichment and only to the extent necessary to prevent loss to the bank by reason of its payment of the item, the payor bank shall be subrogated to the rights . . . (c) of the drawer or maker against the payee or any other holder of the item with respect to the transaction out of which the item arose. (Acts 1962, pp. 156, 306.)" Although we have found no Georgia cases construing this Code section, it appears to us that its intent is to allow the payor bank to be subrogated to the rights of the drawer in a suit by the payor bank against the payee or other holder of the item. We do not believe the subrogation rights which this Code section grants to the payor bank can be used to defeat the plaintiff's claim in this case where the drawer of the checks did not issue a stop payment order, where the only basis for objection to the bank's payment of the items by the drawer is that the endorsements of the materialman were not obtained, and where no unjust enrichment will result, since the materialman will recover no more than the actual damages sustained.

We conclude that the Court of Appeals was correct in holding both the collecting and drawee banks liable to the plaintiff as a matter of law.[1] We also agree that there

---

[1] Code Ann. § 109A-4—207 (1) (a) provides that, "Each customer or collecting bank who obtains payment or acceptance of an item and each prior customer and collecting bank warrants to the payor bank or other payor who in good faith pays or accepts the item that he has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title. . ." Although the question is not raised in this appeal, it

remain in the case factual questions with reference to the amount of damages and that the plaintiff's motion for summary judgment was properly denied for this reason. However, we find it necessary to vacate the judgment of the Court of Appeals and remand the case to the Court of Appeals for consideration of the statute of limitation defenses raised by both the collecting and drawee banks in their answers to the plaintiff's complaint, which were not expressly ruled on by the trial court (although the trial court did grant the banks' motions for summary judgment), and which were asserted by the banks before the Court of Appeals as reasons for affirming the trial court.

*Judgment vacated and remanded with direction. All the Justices concur, except Jordan, Hall and Bowles, JJ., who dissent.*

ARGUED MARCH 13, 1978 — DECIDED MAY 17, 1978 — REHEARING DENIED JUNE 9, 1978.

*Thompson & Redmond, Lee R. Redmond, Jr.,* for appellant (Case no. 33295).

*Jerry A. Buchanan,* for appellees (Case no. 33295).

*Hatcher, Stubbs, Land, Hollis & Rothschild, Jerry A. Buchanan, Gary L. Coulter,* for appellant (Case no. 33296).

*Thompson & Redmond, Lee R. Redmond, Jr.,* for appellees (Case no. 33296).

*Willis & Carter, Grover C. Willis, Jr.,* for appellant (Case no. 33297).

*Marcus B. Calhoun, Jr.,* for appellee (Case no. 33297).

HALL, Justice, dissenting.

I dissent because the banks' payment of these checks without proper indorsement did not cause the aggrieved

---

would appear that since the drawee bank is liable to the nonsigning payee, the collecting bank would, in turn, be liable to the drawee bank for breach of this statutory warranty.

joint-payee any legally cognizable loss under the facts of this case. The joint-payee materialman suffered a loss on his contract with the subcontractor, but there is no basis for shifting this loss to either bank.

Although the majority opinion fails to specify the precise basis for finding liability, it is clear to me that the majority has decided this case on a common-law conversion theory, rather than a statutory conversion theory under Code § 109A-3—419 (1) (c). In other words, liability in this case is *not* predicated on the Uniform Commercial Code. This is made clear by an examination of the cases relied upon by the majority. The Utah case quoted by the majority (Pacific Metals Co. v. Tracy-Collins Bank &c. Co., 21 Utah 2d 400 (446 P2d 303) (1968)) was not decided under the Uniform Commercial Code, and must be seen as a common-law decision. The Illinois case was also decided under the common law. U. S. Fidelity &c. Co. v. Peoples Nat. Bank, 24 Ill. App. 2d 275 (164 NE2d 497) (1960).[1] A careful reading of the case of F. D. I. C. v. Marine Nat. Bank of Jacksonville, 431 F2d 341 (5th Cir., 1970), reveals that liability was predicated on Florida common law, although UCC defenses are dis-·cussed.

That this is a common-law case is made even more clear by the failure of the majority to cite Code § 109A-3—419 (2), which sets the measure of recovery for a conversion under § 109A-3—419 (1) (c). The majority instead insists that the measure of damages is "the actual damages sustained." I agree with the implicit holding that Code § 109A-3—419 (1) (c) does not apply to payment of a check over a *missing* indorsement, since the plain meaning of that section restricts its scope to payment over a *forged* indorsement. A careful reading of the only Georgia case directly on point reveals a similar analysis. *Ins. Co. of N. A. v. Atlas Supply Co.,* 121 Ga. App. 1 (172 SE2d 632) (1970).[2]

---

[1] Both cases involved old statutory negotiable instruments law to some extent, but that was not the basis of liability.

[2] I do not disagree with the holding that payment of a

The more persuasive common-law cases reveal the error in the disposition of this case by the majority. First, it is crucial to note that there was no underlying debt owed by the drawer of these checks (Bartley) to the aggrieved payee-materialman. I agree with the majority that Bartley has a complete defense of failure of consideration to enforcement of these checks by the materialman. Code §§ 109A-4—413, 109A-3—306, 109A-3—408, 109A-3—302.

Moreover, there is a crucial distinction between this case and *Ins. Co. of N. A. v. Atlas Supply Co.,* supra, since in that case there was an agreement that the checks be made jointly payable. That agreement gave the materialman enforceable contract rights in the checks. There is no such agreement in this case. Thus the inclusion of the materialman on the checks was a gratuitous accommodation which gave the materialman no enforceable rights in the intangible property the checks represented.[3]

The Mississippi Supreme Court faced exactly the same question presented in this case, and used the following analysis: "The only benefit or right that appellants [the aggrieved payees] may have lost by the wrongful act of the bank in cashing the check without indorsement is a probable confrontation and advantageous bargaining position which would result from the necessity of both payees indorsing the check.

---

check with a missing indorsement may be a conversion of the check, and in appropriate circumstances a conversion of the intangible rights represented by the check. See generally, Murray, Joint Payee Checks — Forged and Missing Indorsements, 78 Com. L. J. 393 (1973). But see *Sinclair Refining Co. v. Moultrie Banking Co.,* 45 Ga. App. 768 (165 SE 860) (1932). The *Sinclair* case is impliedly overruled by the majority.

[3] I express no opinion on the existence of the right of the joint payee to "possess" the check found by the majority. Any such right was held jointly with the indorsing payee.

That is, the necessity of indorsement might bring the parties together so that the obligation of Lee Welding Service [the payee who cashed the check] to Metal Supply Company [the aggrieved payee] might be discussed and perhaps an adjustment reached. This bargaining position of the appellants was lost by the actions of the bank in cashing and clearing this check without indorsement. However, since appellants' claim is sustainable only on the theory of conversion, it must depend also upon some allegation that the appellants owned some proprietary interest in the property alleged to have been converted as without such an interest, there could be no damage to them. Appellants' only claim to damages under the facts alleged is that which might or might not have resulted from the loss of a bargaining conference that never transpired. Any damages resulting from such situation could only be the product of surmise or conjecture and as such would not be sustainable in law." Kaplan v. Deposit Guaranty Nat. Bank, 192 S2d 391, 395 (Miss. 1967). I agree that where the joint payee has no enforceable rights to the intangible property represented by the check, any damage he might sustain when a bank pays the check without his indorsement is too speculative to be recovered in a court of law.

The Restatement (Second) of Torts (1965) applies a slightly different analysis, but reaches the same result. Comments a & c, § 242. Where a check has been converted, the Restatement allows the plaintiff to recover the value of the intangible rights "of which he has been deprived." Comment a, supra. The defendant can defend an action for conversion of the check and the intangible rights identified with it by showing that the payee has in fact been deprived of no rights by the conversion of the check, or that the actual loss is less than the face value. See Comments a & c.[4]

There is substantial case law to support this

---

[4] Moreover, applying the analysis of Restatement § 222A (What Constitutes Conversion), it is clear that the actions of the banks in this case did not amount to a conversion of the intangible property identified with the checks.

proposition. The Florida Supreme Court has held that where a check is paid over a missing (or forged) indorsement, the banks may defend on the basis that the funds were in fact paid to the intended recipient. Florida Nat. Bank v. Geer, 96 S2d 409 (Fla., 1957) (pre-UCC), followed in Sullivan v. Wilton Manors Nat. Bank, 259 S2d 194 (Fla. Ct. App., 1972) (decided under the UCC). Maryland's highest court, applying pre-UCC, New Jersey law, held that the aggrieved payee could not recover where the payee who in fact received payment had the right to receive the entire face amount of the checks as the proceeds of the sale of his property. Mueller v. Fidelity-Baltimore Nat. Bank, 226 Md. 629 (174 A2d 789)(1961). The Indiana Court of Appeals held that even under the UCC, which appears to set the measure of damages, the aggrieved payee must prove the amount of the actual loss caused by the conversion, and the banks can put forth a defense of mitigation of damages, e.g., that the funds were applied for the benefit of the aggrieved payee. Yeager & Sullivan, Inc. v. Farmers Bank, 317 NE2d 792, 797 (Ind. Ct. App. 1974). Cases from California (Feldman Const. Co. v. Union Bank, 28 Cal. App. 731 (104 Cal. Rptr. 912) (1972)) and Alabama (St. Nat. Bank of Ala. v. Sumco Engineering, Inc., 46 Ala. App. 244 (240 S2d 366, 369) (1970)) impliedly recognize that the defendant can reduce the amount of damages recoverable from him by showing that the aggrieved payee had an interest in the checks worth less than the face value.

In holding that the aggrieved payee could not sue the drawer, the majority has held that the aggrieved payee had no enforceable right in the intangible property represented by the checks. The majority has also recognized that the checks were paid to the individual to whom the drawer owed the debt in question. The stipulated facts leave no doubt that the drawer did not intend that any of the proceeds of the checks be paid directly to the materialman; he intended to pay the subcontractor who was in fact paid. I believe the banks have established a complete defense to this suit as a matter of law.[5]

---

[5] I would not trivialize this case by finding nominal

Moreover, I cannot agree that Code § 109A-4—407(c) (quoted by the majority) must be read as narrowly as the majority has done. The majority reads the term "rights . . . of the drawer" narrowly to mean only *causes of action* of the drawer when it restricts that section to cases where the payor bank is the plaintiff. I believe the term "rights" should be read to include defenses of the drawer, and that the payor- drawee bank (First National) should be able to assert the drawer's defense of failure of consideration in this suit. This would also eliminate the collecting bank's derivative liability (on its warranty), and leave only the question of whether the collecting bank is liable for converting the checks.

What the majority opinion may do is allow the materialman to shift his loss under his contract with the subcontractor to one of the banks because of their negligence in handling these checks, even though that negligence did not cause the loss of which he complains. The materialman never dealt with these banks, and did not even know the checks existed until years after the last one was paid. The materialman agreed to look solely to the credit of the subcontractor for payment.[6] Now he seeks to recover from the owner who never agreed to pay him, and the banks because the owner gratuitously made him a joint-payee, and the banks failed to require his indorsement on checks in which he never had an enforceable interest. There is no basis in law for this recovery, which would amount to a punitive penalty on the responsible bank.

---

damages for the value of the pieces of paper on which the checks were written. Refrigeration Supplies is suing for value of the promise to pay represented by those checks, i.e. the intangible property represented by the checks.

[6] Of course the materialman's lien provided further security until it expired. No reason is given for the failure of the materialman to file his lien. The lien was lost before the checks in question were written. *Refrigeration Supplies, Inc. v. Bartley,* 144 Ga. App. 141 (240 SE2d 566) (1978) (Smith, J., dissenting).