No. 82-303

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

ELEANOR STAPLETON,

                    Plaintiff and Appellant,

    -vs-

FIRST SECURITY BANK,

                    Defendant and Respondent.

---

APPEAL FROM: District Court of the Fourth Judicial District,
             In and for the County of Missoula,
             The Honorable W. W. Lessley, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                Milodragovich, Dale & Dye; Lon J. Dale argued,
                Missoula, Montana

        For Respondent:

                Mulroney, Delaney & Dalby; Dexter Delaney argued,
                Missoula, Montana

---

                                Submitted:  September 13, 1983

                                  Decided:  December 23, 1983

Filed:    DEC 23 1983


*Ethel M. Harrison*
_____
                    Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Plaintiff Eleanor Stapleton sued for statutory conversion of $32,600. She appeals from the judgment of the Fourth Judicial District Court, Missoula County, in favor of three defendant banks. We reverse and remand for further proceedings.

The relevant issues are:

1. Did the District Court err in determining, as to drawee banks Western Montana National Bank (Western) and Federal Home Loan Bank of Seattle (Federal), that plaintiff as a joint payee could recover less than the face amount of the converted instruments?

2. Did the District Court err in determining that collateral estoppel precluded recovery by the plaintiff?

Arthur and Eleanor Stapleton, husband and wife, had a joint checking account at First Security Bank (First Security). On October 1, 1974, Eleanor closed the account by withdrawing all remaining funds and writing "closeout" in the memo portion of her check. First Security recognized her closing of the account by not carrying the account on the bank's computer trial balance and by not sending statements after October, 1974.

In April 1976, Arthur deposited two joint-payee checks in the closed account. Both checks were payable to Arthur M. and Eleanor M. Stapleton. The two checks were in payment for sale of real property located in Missoula, Montana and owned by Eleanor and Arthur as joint tenants. The checks totaled approximately $32,600. First Security reopened the closed account and deposited the checks. The District Court expressly found that Eleanor was no longer a customer of the bank. First Security accepted both checks without the endorsement of either payee and without the knowledge or consent of Eleanor. Despite the absence of endorsements,

2

Western and Federal, the drawee banks, accepted and paid the respective checks when received by them. Shortly after depositing the checks, Arthur withdrew $32,500 from the account without the knowledge or consent of Eleanor.

Later in 1976, Arthur left Montana and initiated divorce proceedings against Eleanor in the State of Nevada. Eleanor participated in the Nevada proceedings and was represented by counsel. The Nevada District Court determined the marital assets of the Stapletons, including proceeds from the sale of real property. The Court found assets in the amount of approximately $125,000.

The Court referred to the sale of the Missoula property and noted that the proceeds from the sale represented by the two checks were converted by Arthur. But the decree did not specifically find that the proceeds were available for distribution. The Court did not specifically determine whether Arthur had retained or dissipated those proceeds. First Security now claims those proceeds were available for distribution. The Court recognized Arthur's attempts to abscond with marital assets. Finally, the Court awarded Eleanor $25,000 plus miscellaneous personalty.

Arthur appealed the Nevada judgment, but prior to decision the parties settled. They executed a Settlement Agreement and Satisfaction of Judgment, whereby Eleanor released Arthur from all obligations emanating from the divorce decree in return for $13,500 and dismissal of the appeal. The Settlement Agreement stated it was an effort to "resolve all litigation" between the parties in the State of Nevada and any other actions "emanating" from the Nevada judgment. The Satisfaction of Judgment incorporated the Settlement Agreement and stated that the parties had "settled all matters of controversy between them . . . in consideration of . . . $13,500." The Settlement Agreement

3

and Satisfaction of Judgment were executed more than two months after this lawsuit was filed.

Eleanor filed suit in Montana for statutory conversion under the Montana Uniform Commercial Code (UCC) against First Security, the depositary bank, in January 1977. Eleanor later amended the complaint to include defendants Western and Federal, drawee banks. Both drawee banks cross-claimed against First Security for indemnification under the warranty provisions of the UCC. First Security counterclaimed against Eleanor and filed a third-party action against Arthur. The District Court severed the third-party action. The case was submitted on stipulated facts to the District Court sitting without a jury. Findings and conclusions were entered on June 3, 1982 and judgment for defendants was entered on June 18, 1982. Plaintiff Eleanor appeals. The parties executed a "Stipulation for Nonappearance" of Western and Federal because First Security must indemnify Western and Federal for any liability in this matter. Only First Security appears as a defendant on appeal.

I.

Appellant argues that section 30-3-419(2), MCA allows her to recover the full face amounts of the converted checks from Western and Federal. She contends the District Court erred in determining that her award is anything less than the face amount of the checks.

The District Court held that all three defendant banks converted the respective checks because they paid the checks without endorsement. Section 30-3-419(1)(c), MCA provides:

"(1) An instrument is converted when:

". . .

"(c) it is paid on a forged endosement."

Payment on a "forged endorsement" includes payment on an unauthorized endorsement or without any endorsement. Beyer

4

v. First National Bank of Dillon (Mont. 1980), 612 P.2d 1285, 1289, 37 St.Rep. 1035, 1040. The District Court's conversion holding is not challenged on appeal.

A collecting bank warrants to a drawee bank, according to the terms of section 30-4-207, MCA, that payment is authorized. The objective of the UCC is to place the loss on the wrongdoer or, because the wrongdoer is usually unavailable or unable to pay, upon the party who last dealt with the wrongdoer. This party is best able to prevent the conversion by carefully checking endorsements. Perkins State Bank v. Connolly (5th Cir. 1980), 632 F.2d 1306, 1318. Thus, although First Security must indemnify drawee banks, the issue remains the measure of drawees' liability.

Eleanor argues the District Court failed to apply the proper measure of damages. The District Court held that under section 30-3-419(2), MCA the measure of liability for conversion may be shown to be less than the whole amount of the converted instruments. Appellant argues that the District Court was without authority to reduce the amount of her recovery against drawee banks.

Section 30-3-419(2) provides:

> "(2)    In an action against a drawee under subsection (1) the measure of the drawee's liability is the face amount of the instrument. In any other action under subsection (1) the measure of liability is presumed to be the face amount of the instrument." (emphasis added)

Official Comment 4 to this section states:

> "Subsection (2) . . . adopts the rule generally applied to the conversion of negotiable instruments, that the obligation of any party on the instrument is presumed . . . to be worth its face value. Evidence is admissible to show that for any reason . . . the obligation is in fact worth less, or even that it is without value. In the case of the drawee, however, the presumption is replaced by a rule of absolute liability." (emphasis added)

Plaintiff argues that under Official Comment 4, Western and Federal are absolutely liable for the full amount of the

5

checks even though the checks are made payable to two persons. Plaintiff would admit that First Security might be able to prove her interest is something less than the face amount of the checks, but emphasizes the absolute liability of the drawee banks. See Annot., 47 A.L.R.3d 537, 542.

We agree that liability for statutory conversion is undisputed here, but the amount of recovery by a joint payee is not fixed. Neither the statute nor the comment addresses joint-payee instruments. Based upon the Official Comment, plaintiff argues that she is entitled under the statute to collect $32,600, the face amount of both checks. Plaintiff's interpretation would allow a windfall to a joint payee who owns less than the face amount of a check. Under that theory, wherever there are joint payees, each could recover the face amount of a check, requiring a drawee bank to pay two times the amount of the checks, or more. We do not conclude that the statute requires recovery without regard to the joint payee's actual interest in the check.

There is some authority for the absolute position of appellant. In Smith v. General Casualty Co. of Wisconsin (Ill. App. 1979), 394 N.E.2d 804, a $7,000 check was made payable to an attorney and his client as joint payees. The check was paid over a forged endorsement to the attorney. The client sued drawee, General Casualty, for conversion. Before trial, the client received partial reimbursement of $2,500 from the Illinois Client Security Fund. 394 N.E.2d at 805-06. Drawee contended that the client's recovery should be reduced by the amount already received through the Client Security Fund. 394 N.E.2d at 807. The Court rejected that argument, holding that the equivalent of section 30-3-419(2), MCA sets the measure of damages as the face amount of the instrument. The Court stated:

"There is no authority for reducing the amount of recovery thus established by statute, and the

6

general rule regarding collateral sources [citations omitted] militates against creating such a rule here. We believe the trial court correctly awarded plaintiff the face amount of the converted instrument." 394 N.E.2d at 807.

The Court did not determine the relative interests of the joint payees in the check. The payment was received from a security fund, a type of insurance, which reasonably should not have reduced the liability of the drawee. Reduction of recovery by payment from a collateral source is distinguishable from determination of a joint payee's actual interest.

First Security argues that the same measure of damages applies to a drawee bank as to a collecting bank. We do not agree. It is true that in an action against a collecting bank, "[e]vidence is admissible to show that _for any reason_ such as insolvency or the existence of a defense the obligation is in fact worth less, or even that it is without value." Official Comment 4, section 30-3-419(2), MCA (emphasis added). But such defenses are not available in determining the measure of drawees' liability. That measure is "absolute" liability for the face amount of the check. Official Comment 4.

We conclude that Western and Federal are absolutely liable for $32,600, the face amount of the checks. However, the relative interests of the joint payees in that amount must be determined. The total of the shares of the joint payees should add up to $32,600. We have concluded that the amount of recovery by a joint payee is that amount to which he is entitled, which may be up to and including the face amount of the check.

Other courts have employed this concept on similar facts. In Mueller v. Fidelity-Baltimore National Bank (Md. 1961) 174 A.2d 789, a purchaser of real estate issued joint-payee checks to a husband and wife. Husband had

7

inherited the real estate from his father. Husband forged wife's endorsements and cashed the checks. Wife sued the cashing bank to recover the amounts of the two checks, but the trial court denied recovery because it found that wife had no right to any of the check proceeds. 174 A.2d at 790. On appeal, wife argued she was a joint owner of the checks and that joint payees of negotiable instruments are presumed, absent contrary evidence, to be equal owners. The appellate court agreed that her recovery depended on her relative interest in the proceeds of the real estate, but found she had released her interest in the real estate prior to its sale. The lower court's judgment was affirmed. 174 A.2d at 790-92. We agree that a joint payee should not be allowed to recover more than his or her interest in converted checks.

We hold that Western and Federal are liable to Eleanor to the extent of her interest in the two checks. The record shows that the converted checks were the proceeds of real property owned by Arthur and Eleanor Stapleton as joint tenants. In Montana, joint tenants are entitled to equal shares of joint property absent proof to the contrary. Marshall v. Minlschmidt (1966), 148 Mont. 263, 269-70, 419 P.2d 486, 489; Hennigh v. Hennigh (1957), 131 Mont. 372, 376, 309 P.2d 1022, 1024-25. Section 30-1-103, MCA states that "[u]nless displaced by the particular provisions of this code [the UCC], the principles of law and equity . . . shall supplement its provisions." The principles of joint ownership are not displaced by the UCC provision here in question and may be used to supplement the UCC.

We hold that absent proof to the contrary, Eleanor may recover one-half the amount of the checks. On remand, the District Court may consider evidence presented by the parties that Eleanor's proportional interest in the proceeds was greater or less than one-half. This shall not include

8

evidence of other transactions or obligations between Eleanor and Arthur or Eleanor and the banks.

Eleanor argues that section 30-1-106(1), MCA further supports her claim for recovery of the face amount. That section states:

> "The remedies provided by this code [the UCC] shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed but neither consequential or special nor penal damages may be had except as specifically provided in this code or by other rule of law."

While we agree with Eleanor that the measure of damages section should be liberally administered, we note that this section emphasizes the goal of putting a party in "as good a position," not in a better position. We believe the procedure outlined above will accomplish precisely what this statute demands.

## II.

Appellant argues that the District Court erred in applying collateral estoppel to deny her recovery. She argues that under either of two suggested tests, collateral estoppel does not apply. We agree.

In Gessell v. Jones (1967), 149 Mont. 418, 427 P.2d 295, we stated:

> "'Collateral estoppel' . . . may be considered as a branch of the doctrine of res judicata but is distinguishable from the bar to litigation normally called res judicata. The distinction is that res judicata bars the same parties from relitigating the same cause of action while collateral estoppel bars the same parties from relitigating issues which were decided with respect to a different cause of action . . .. The bar that arises from collateral estoppel extends to all questions essential to the judgment and actually determined by a prior valid judgment." 149 Mont. at 421, 427 P.2d at 296 (emphasis added).

Collateral estoppel prevents parties from attempting to redetermine issues already decided.

The parties cite the four-part test of Smith v. County of Musselshell (1970), 155 Mont. 376, 472 P.2d 878, to determine whether collateral estoppel applies:

"These criteria are: (1) the parties or their privies must be the same; (2) the subject-matter of the action must be the same; (3) the issues must be the same, and must relate to the same subject-matter; and (4) the capacities of the persons must be the same in reference to the subject-matter and to the issues between them." 155 Mont. at 378, 472 P.2d at 880.

First Security makes extended arguments with regard to the four-part test and suggests certain changes in the collateral estoppel rule. We do not consider these arguments because we conclude that part (3) of the test, that the issues must be the same and relate to the same subject matter, is not met here. In Brannon v. Lewis and Clark County (1963), 143 Mont. 200, 387 P.2d 706, this Court concluded that of the four criteria, identity of issues is the most important. Further, identity of issues requires that the "precise question" has been litigated in the prior action. 143 Mont. at 207, 387 P.2d at 710-11. We reiterated these principles in Harris v. Harris (Mont. 1980), 616 P.2d 1099, 1101, 37 St.Rep. 1696, 1699.

The Nevada divorce proceedings did not involve the "precise issues" litigated in the UCC conversion action. The Nevada findings listed the various monies and assets of Eleanor and Arthur Stapleton. No reference was made in the Nevada proceedings to the right of a conversion action against Western and Federal. The issues in this action require a determination of whether the defendant banks paid checks without joint payees' endorsements and determination of the amount of the checks and the relative interests of Eleanor and Arthur, the joint payees. These issues were not determined in the Nevada proceedings and in fact were not even considered by the Nevada Court.

10

We hold that the issues litigated in the Nevada proceeding and those litigated in this action are not identical and that collateral estoppel does not bar plaintiff's recovery.

The judgment of the District Court is reversed and the cause is remanded for determination of Eleanor Stapleton's interest in the checks.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

_____
Hon. John M. McCarvel
Sitting for Mr. Justice
Frank B. Morrison, Jr.

11

Mr. Justice John C. Sheehy, concurring and dissenting:

I dissent to the portion of the majority opinion that plaintiff is entitled only to one-half of the face amount of the two checks in the absence of additional proof. Instead, I would order on remand that judgment be entered in her favor for the face amount of the two checks.

There is no reason for us to assume that the legislature did not know what it was doing when it imposed absolute liability on the drawee bank in section 30-3-419(2), MCA. It is evident to me that the legislature thought it important to prescribe full liability for the face of the instrument as a measure to prevent happening what did happen here, a careless negotiation in a closed account of unendorsed checks presented by one of two named payees. The statute imposes a heavy liability even though one of the joint payees is a wrong-doer. It is more important, I believe, and the legislature surely so believed, to preserve the integrity of the banking process in handling negotiable instruments for the benefit of the commercial community. After all, the UCC was largely produced by bankers, and they saw in the provision of absolute liability protection to themselves as well as to the public dealing with banks.

The majority pay large attention to the circumstance of two names in these checks which is not mentioned in section 90-3-419(2). Here the majority have placed a molehill on the desk, and managed to make a mountain of it. The solution should be simple: The banks are absolutely liable for the face of the instruments, once. It is the business of the joint payees how the proceeds should be divided between them. Section 70-1-311, MCA. Instead, the majority supersede the

- 12 -

plain mandate of the lawmakers in refusing to impose absolute liability.

Although I disagree with the majority in whole, I must point out also their misinterpretation of joint ownership law in assuming the wife is entitled to at least one-half of the proceeds. That result is based on the assumption that there existed here a joint tenancy interest. No such interest exists on the record here.

Every interest created in favor of two or more persons is a tenancy in common, including husband and wife, unless the instrument creating the interest expressly provides for a joint tenancy. Section 70-1-312, MCA. Here we know only that the checks were made payable to two persons, without a creation of joint tenancy. Property in tenancy in common may be owned by the parties in any proportion. On the other hand, if a joint tenancy is created the law dictates that the several persons own in _equal_ shares. Section 70-1-307, MCA. Thus, the banking laws provide that even in joint tenancy, the whole of the deposit may be paid to any of the depositors demanding the same. Section 32-1-442, MCA. Here the wife had a right by statute to the whole of the face amount of the checks. She should not be put to proof, between her and the bank, as to her ownership of a portion of the deposit.

I concur in the rest of the opinion.

                                    John G. Sheehy
                                    _____
                                            Justice

        I also join the majority opinion with the exception that I join Justice Sheehy in his dissent. Judgment should be entered in favor of plaintiff for the face amount of the two checks.

                                    Daniel J. Shea
                                    _____
                                            Justice

- 13 -