**In re FLIGHT TRANSPORTATION CORPORATION SECURITIES.**

**Russell T. LUND, Jr., Appellant,**

v.

**NORWEST BANK, MINNEAPOLIS and American National Bank and Trust, St. Paul, Appellees.**

No. 86–5075.

United States Court of Appeals, Eighth Circuit.

Submitted March 18, 1987.

Decided Aug. 4, 1987.

Rehearing and Rehearing En Banc Denied Oct. 22, 1987.

Jerome B. Pederson, Minneapolis, Minn., for appellant.

Duane Krohnke, Minneapolis, Minn., for appellees.

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and ARNOLD, Circuit Judge.

McMILLIAN, Circuit Judge.

Russell T. Lund, Jr., appeals from a final judgment entered in the United States District Court[1] for the District of Minnesota, following a bench trial, in favor of Norwest Bank Minneapolis, N.A. (Norwest), and American National Bank & Trust Co. of St.

Paul (ANB) on his claim that Norwest and ANB had converted a cashier's check by paying the check over his forged endorsement. *In re Flight Transportation Corp. Securities Litigation,* No. 4–82–1578 (Master Doc. No. 4–82–874) (D.Minn. Nov. 21, 1985) (Pre-trial Order No. 257). For reversal appellant argues the district court erred in (1) denying his motion for summary judgment, (2) finding appellant and Rubin were partners, and (3) making certain evidentiary rulings. For the reasons discussed below, we affirm the judgment of the district court.

This appeal was argued during the October 1986 session. During oral argument, counsel was questioned about the finality of the district court judgment and the absence of a Fed.R.Civ.P. 54(b) certification. In November 1986, this court, on its own motion, remanded the case to the district court for the limited purpose of considering whether to grant Rule 54(b) certification on a nunc pro tunc basis. On remand, the district court certified its order dated November 21, 1985, as final for purposes of appeal under Fed.R.Civ.P. 54(b), and the certification was received by this court in March 1987.

"[Rule] 54(b) allows a district court dealing with multiple claims or multiple parties to direct the entry of final judgment as to fewer than all of the claims or parties; to do so, the court must make an express determination that there is no just reason for delay." *Curtiss-Wright Corp. v. General Electric Co.,* 446 U.S. 1, 3, 100 S.Ct. 1460, 1462, 64 L.Ed.2d 1 (1980). In making determinations under Rule 54(b),

[a] district court must first determine that it is dealing with a "final judgment." It must be a "judgment" in the sense that it is a decision upon a cognizable claim for relief, and it must be "final" in the sense that it is "an ultimate disposition of an individual claim entered in the course of a multiple claims action."

Once having found finality, the district court must go on to determine whether

there is any just reason for delay. Not all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims. The function of the district court under the Rule is to act as a "dispatcher." It is left to the sound judicial discretion of the district court to determine the "appropriate time" when each final decision in a multiple claims action is ready for appeal. This discretion is to be exercised "in the interest of sound judicial administration."

. . . .

There are ... two aspects to the proper function of a reviewing court in Rule 54(b) cases. The court of appeals must, of course, scrutinize the district court's evaluation of such factors as the interrelationship of the claims so as to prevent piecemeal appeals in cases which should be reviewed only as single units. But once such juridical concerns have been met, the discretionary judgment of the district court should be given substantial deference, for that court is "the one most likely to be familiar with the case and with any justifiable reasons for delay." The reviewing court should disturb the trial court's assessment of the equities only if it can say that the judge's conclusion was clearly unreasonable.

*Id.* at 7–8, 10, 100 S.Ct. at 1464, 1465, 1466, *citing Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 435–37, 76 S.Ct. 895, 899–900, 100 L.Ed. 1297 (1956); *see, e.g., Hayden v. McDonald,* 719 F.2d 266, 268–69 (8th Cir. 1983); *Allis-Chalmers Corp. v. Philadelphia Electric Co.,* 521 F.2d 360, 364 (3d Cir.1975) (relevant factors to consider in reviewing "equities" of Rule 54(b) certifications).

■ We hold the district court did not abuse its discretion in certifying the judgment dated November 21, 1985, as final for purposes of appeal under Rule 54(b). We agree with the district court that the November 21, 1985, order was a final judgment because it completely disposed of the individual claim between Lund and Norwest and ANB and that there was no just reason to delay entry of judgment and the subsequent appeal. *In re Flight Transportation Corp. Securities Litigation,* No. 4–82–1578 (Master Doc. No. 4–82–874) (Dec. 19, 1986) (Rule 54(b) order). We agree with the district court that there is no significant relationship between the adjudicated and unadjudicated claims, there is no possibility that the appeal of the judgment would be mooted by future developments in the underlying Flight Transportation Corp. Securities litigation (FTC litigation),[2] there is no possibility that this court would be obliged to consider the issues raised in the appeal a second time, and there are no claims or counterclaims that could result in a setoff against the judgment. *Id.* at 4–5. The district court's assessment that there is nothing to be gained by delaying this appeal pending resolution of the underlying FTC litigation and that an immediate appeal is in the interest of sound judicial administration is clearly reasonable. *Id.* at 5–6.

The following statement of facts is taken in large part from the district court's memorandum opinion and orders. Lund was a co-founder, outside director, shareholder, and officer of the ill-fated Flight Transportation Corp. (FTC), which was originally known as the Flight Training Center. William Rubin later became a shareholder, director and president of FTC. In June 1978 Lund and Rubin together purchased a Learjet and leased it to FTC. ANB financed the purchase of the aircraft. In December 1978 the aircraft was completely destroyed in a crash at the Minneapolis-St. Paul International Airport. After some investigation, the insurer paid the proceeds of the aircraft insurance policy to ANB. ANB applied the insurance proceeds to the financing agreement and, on February 6, 1979, issued a cashier's check payable to the order of "William Rubin & Russell T. Lund Jr." for $342,684.69, the amount the insurance proceeds exceeded the loan balance.

2. See *In re Flight Transp. Corp. Securities Litigation,* 794 F.2d 318 (8th Cir.1986) (settlement), *cert. denied,* —— U.S. ——, 107 S.Ct. 1886, 95 L.Ed.2d 494 (1987).

On February 9, 1979, the check, apparently endorsed by both Rubin and Lund, was deposited in the joint checking account (the "jet account") that had been opened by Rubin and Lund at Fifth Northwestern National Bank of Minneapolis (now Norwest Bank Calhoun Isles) to handle the financial transactions associated with the acquisition and maintenance of the Learjet and other aircraft. Fifth Northwestern National Bank transmitted the check for collection to Norwest. Norwest, as the collecting bank, submitted the check to ANB for payment. ANB paid the check, and Norwest forwarded the proceeds to Fifth Northwestern National Bank, which then credited the jet account. After February 9, 1979, funds deposited in the jet account, in excess of the amount of the check in question, were used to purchase and maintain other aircraft subsequently purchased by Rubin and Lund.

Lund claimed that he did not know anything about the check until sometime after the Securities and Exchange Commission had initiated proceedings against Rubin and FTC in June 1982. Lund alleged that he did not endorse the check (his first name was misspelled), his endorsement is a forgery, and Rubin misappropriated the proceeds.[3] Norwest denies that Lund's endorsement is a forgery but does not dispute that Lund did not personally endorse the check. Lund's forged check claim was filed in December 1982 in connection with the underlying FTC litigation. As one of FTC's outside directors, Lund entered into the 1985 settlement agreement, which was later approved by this court in *In re Flight Transportation Corp. Securities Litigation*, 794 F.2d 318 (8th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1886, 95 L.Ed.2d 494 (1987). Pursuant to the settlement agreement, Lund relinquished, as consideration for his consent to the settlement agreement, all FTC-related claims except for certain claims that were specifically reserved. One of the specifically reserved claims was Lund's forged check claim against Norwest and ANB (count VIII).

Pursuant to the terms of the settlement agreement, the district court severed and tried the forged check claim. Lund claimed that (1) ANB was liable for conversion because it paid the check over a forged endorsement, Minn.Stat.Ann. § 336.3–419(1)(c) (1966 & West Supp.1987); (2) Norwest wrongfully submitted the check for collection to ANB, *id.* § 336.3–116(b) (incomplete endorsement); and (3) Norwest erroneously warranted that it had good title to ANB, which paid the check in good faith, *id.* § 336.3–417(1)(a).

Norwest and ANB argued that Rubin and Lund were partners in the aircraft business and that Rubin, as a partner, was authorized to endorse the check on behalf of the partnership, *id.* §§ 323.08 (1981 & West Supp.1987) (partners as agents of partnership), 336.3–110(1)(g), 336.3–403(1). Thus, it is implicit in the argument of Norwest and ANB that Rubin signed the check both in his own name and also, acting as Lund's partner, in Lund's name.

Cross-motions for summary judgment were denied, and a bench trial was held in August 1985. Lund was the only witness to testify at the trial; the parties introduced into evidence documentary exhibits and depositions, and the district court allowed the parties to submit additional written evidence after trial by mail. The district court found that Rubin and Lund were partners in the aircraft leasing business and that Rubin had endorsed the check in Lund's name as a partner and then deposited the check in the checking account used for partnership business. *In re Flight Transportation Corp. Securities Litigation*, No. 4–82–1578 (Master Doc. No. 4–82–874) (Pre-trial Order No. 257), slip op. at 9–11. This appeal followed.

■ Lund first argues that the district court erred in denying his motion for summary judgment. We disagree. There were genuine issues of material fact in dispute, specifically the related questions whether Rubin and Lund were partners in the aircraft leasing business and whether

---

**3.** Following the SEC investigation of FTC, Rubin was convicted of securities fraud and has been sentenced to a term of imprisonment and fined.

Lund's signature was unauthorized and thus a forgery.

■ Lund next argues that there was no evidence to support the district court's finding of partnership. Lund specifically argues that he did not intend to form a partnership with Rubin. Lund further argues that even if the district court correctly found that they were partners, Rubin's endorsement of the check in Lund's name was not in furtherance of partnership business and thus was not authorized. We disagree.

We hold the district court's finding of partnership is not clearly erroneous. Under Minnesota law, a partnership is an "association of two or more persons to carry on as co-owners as business for profit."

It is essential to the existence of a partnership that there be a joint contribution to the enterprise and something in the nature of a community of interest. When parties contribute their experience, their capital, and their energies to a common enterprise, in which they are to share the profits, a partnership may result, notwithstanding an expressed intention not to create such a relationship.

*Hansen v. Adent*, 238 Minn. 540, 545, 57 N.W.2d 681, 684 (1953) (citation omitted). The record supports the district court's finding that between 1978 and 1982 Rubin and Lund were partners engaged in the aircraft leasing business. Together, Rubin and Lund purchased six aircraft; Lund contributed more capital than Rubin did, but Rubin contributed his managerial expertise and handled the day-to-day matters, including the financial records, insurance and bank accounts. They opened a joint checking account at the Fifth Northwestern National Bank for the aircraft leasing business; aircraft lease payments were deposited in and expenses were paid from this account. They expected to realize tax benefits from investment tax credits, business deductions and losses attributable to the partnership.

Rubin's status as a partner in the aircraft leasing business made him Lund's agent with respect to third parties, such as Norwest and ANB, for the purpose of carrying on the usual business of the partnership and thus provided him with the implied authority, as a partner, to endorse Lund's name on the check and to deposit the check in the jet account. *See* Minn. Stat.Ann. § 323.08; *see, e.g., Keane v. Pan American Bank*, 309 So.2d 579, 581 (Fla. Ct.App.1975) (partners in law firm); *Link v. First National Bank*, 312 Ill.App. 502, 38 N.E.2d 815, 818 (1942); *Boyer v. First National Bank*, 476 N.E.2d 895, 900–01 (Ind.Ct.App.1985) (missing endorsement); *Grosberg v. Michigan National Bank*, 420 Mich. 707, 362 N.W.2d 715, 719–22 (1984). Because the Uniform Commercial Code (UCC) defines a forged endorsement as a form of "unauthorized signature," a signature that is authorized is not a forgery under the UCC. Minn.Stat.Ann. § 336.3–404(1); *compare Grosberg v. Michigan National Bank*, 362 N.W.2d at 719 (partnership; implied authority to endorse), *with Quintana v. Allstate Insurance Co.*, 378 N.W.2d 40, 43–44 (Minn.Ct.App.1985) (no partnership; no authority to endorse). Because Rubin had the authority, as a partner, to sign the check on behalf of Lund, Lund's endorsement was not a forgery. There were no restrictions on Rubin's authority as a partner to endorse and negotiate checks in the course of carrying on the usual business of the partnership; in fact, due to Lund's acquiescence [4] in Rubin's doing so, Rubin had exclusive control over the financial arrangements of the partnership, including the handling of the jet account.

■ In addition, we note that there is an alternative, independent ground that supports the district court's conclusion. The jet account was an active account. After Rubin deposited the insurance check and other checks in the jet account, funds substantially in excess of the amount of the

---

4. The affirmative defense of contributory negligence was not raised by Norwest and ANB and was therefore waived. Because the district court decided the case on the partnership ground, the district court's reference to Lund's arguably negligent acquiescence in Rubin's handling of the jet account is not necessary to its analysis.

insurance check were later paid out of that account to cover the legitimate expenses of the aircraft leasing business. There was no guarantee that Lund would have received any of the proceeds of the insurance check even if he had endorsed the check. Under these circumstances, Lund did not suffer any actual loss and therefore could not recover any damages. *See Boyer v. First National Bank,* 476 N.E.2d at 901; *W.S. Clark & Sons v. Union National Bank,* 84 N.C.App. 686, 353 S.E.2d 439, 440 (1987).

We have reviewed Lund's claims of evidentiary error and find them to be without merit.

Accordingly, the judgment of the district court is affirmed.