# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 01-3282

———————

Cynthia McAllister,                    *
                                       *
            Appellant,                 *
                                       *   Appeal from the United States
      v.                               *   District Court for the Western
                                       *   District of Missouri.
Transamerica Occidental Life           *
Insurance Company,                     *
                                       *
            Appellee.                  *

———————

Submitted: November 8, 2002

Filed: April 15, 2003

———————

Before RILEY, BEAM, and SMITH, Circuit Judges.

———————

RILEY, Circuit Judge.

Cynthia McAllister (McAllister) sued her employer, Transamerica Occidental Life Insurance Company (Transamerica), for failing to pay overtime wages in violation of the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201-219 (2000). Finding McAllister exempt from the FLSA's overtime requirements, the district court[1] granted summary judgment in Transamerica's favor. We affirm.

———————

[1]By consent of the parties, the dispute was referred for final disposition to the Honorable Robert E. Larsen, United States Magistrate Judge for the Western District

## I. BACKGROUND

Transamerica is an insurance company selling life insurance, disability and annuity policies. In 1985, McAllister began working for Transamerica as a claims examiner processing death and disability claims. In 1989, she was promoted to senior claims examiner, and, in 1997, was promoted to claims coordinator, the position she held until she resigned in 2000. Since 1989, McAllister had the authority to approve contestable claims up to $150,000, incontestable claims up to $250,000, and to disburse up to $50,000.

The job description for a claims coordinator, which McAllister confirmed during her deposition, requires a coordinator, as an essential job function, to "[i]ndependently handle the most complex life claims." McAllister's job description also stated she was required to use her "professional knowledge and experience to act independently to achieve objectives." She had to train and coach other examiners. Finally, her position required she be "[a]ble to process independently the most complex and large dollar amount claims, i.e., contestable, fraud, disappearances, rescissions and reformations," and be "[a]ble to handle difficult claims correspondence . . . with minimal supervision."

When applying for a research coordinator position in June 1996, McAllister made the following representation:

> In my eight years experience in processing contestable claims, I have earned approval to clear contestable claims up to $150,000. This approval is granted only upon a foundational knowledge and experience in processing all types of claims and the proven ability to work independently with minimal direction and supervision. Processing claims of various types has allowed me to become effective in interpreting contract law and insurance statutes. Claim processing has also strengthen [sic] my analytical and problem solving skills especially

of Missouri. 28 U.S.C. § 636(c).

in the analyzing of the medical information received during the handling
of contestable claims.

During her deposition, McAllister acknowledged this description is an accurate portrayal of what she had been doing as a senior claims examiner.

McAllister was skilled in following detailed claims manuals.  The Foreword to the Incontestable Claims Manual for life claims processing contains the following language:  "No guide can be written in sufficient detail to cover all facets of claims handling.  A large percentage of our work cannot be guided by a rule book; it has to be learned on the job.  A Claims Examiner becomes a professional through continued education, training, and experience.  Nothing is more important than good common sense judgment."  The Foreword to the Contestable Claims Manual contains nearly identical language, but also makes the following statement:  "The claims philosophy of the Company is to do more than the law requires with respect to fair claims handling.  Our policy is to bend over backward to give the rights of our insureds as much importance as those of the Company.  We seek to find ways to pay, not ways to decline to pay, all valid claims, promptly and courteously."

McAllister had responsibilities relating to the investigation of claims, such as the ability to direct claims handling and to expedite investigations.  She was required to thoroughly review investigation reports when they arrived to determine if further handling was necessary.  For example, whenever it appeared an insured may not have disclosed material medical history, McAllister had to determine whether to ask the investigator to do more work or to refer the claim to the medical department.  McAllister was also required to be on the lookout for fraudulent claims.  When discussing "Accident Investigations," the manual states: "If the possibility of a misrepresentation is learned during the investigation, consider whether or not it should be pursued for additional documentation."

In 1999, McAllister's annual salary exceeded $40,000. During some workweeks, Transamerica required McAllister to work more than forty hours. McAllister sued Transamerica for failing to pay her $5378.91 in overtime wages for overtime work performed in 1999. Transamerica claimed McAllister was an exempt administrative employee not entitled to overtime compensation. The district court agreed and granted summary judgment to Transamerica.

On appeal, McAllister claims the district court erred in concluding she was an exempt employee for the following reasons: (1) she was not paid on a salary basis; (2) she exercised no discretion or independent judgment, but simply adhered to policy manuals and state law; (3) the court failed to consider pertinent Department of Labor (DOL) regulations, see 29 C.F.R. § 541.207(c)(1), (3) (2000); and (4) the court failed to determine the percentage of McAllister's time spent on discretionary activities. She also claims the district court abused its discretion by denying her post-judgment motion to file additional evidence.

The district court's grant of summary judgment to Transamerica must be reviewed de novo. Mayer v. Nextel West Corp., 318 F.3d 803, 806 (8th Cir. 2003). Summary judgment for Transamerica is proper if the evidence, viewed in the light most favorable to McAllister and giving her the benefit of all reasonable inferences, shows there are no genuine issues of material fact and Transamerica is entitled to judgment as a matter of law. Id.; Fed. R. Civ. P. 56(c).

## II.  DISCUSSION
### A.  Administrative Exemption

The FLSA was enacted to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). To further that goal, the FLSA requires employers to pay employees overtime pay for working more than forty hours in a workweek. § 207(a)(1). However, an employee is exempt from the overtime

requirements if she is employed in an administrative capacity, as defined by the Secretary of Labor. § 213(a)(1). Transamerica has the burden to prove McAllister is exempt from overtime compensation. Fife v. Harmon, 171 F.3d 1173, 1174 (8th Cir. 1999).

In its implementing regulations, the DOL created a long test and a short test to determine whether an employee is employed in an administrative capacity. See 29 C.F.R. § 541.2. As the district court properly recognized, McAllister's position must be analyzed under the short test. See §§ 541.2(e)(2), 541.214(a). Under the short test, Transamerica must prove the following: (1) McAllister was paid on a salary basis of at least $250 per week; (2) McAllister's primary duty consisted of the performance of office work "directly related to management policies or general business operations of the employer or the employer's customers"; and (3) McAllister's performance of such primary duty included "work requiring the exercise of discretion and independent judgment." § 541.214(a).

### 1.    Salary Basis

Transamerica must first prove it paid McAllister on a salary basis of at least $250 per week. §§ 541.2(e)(2), 541.214(a). McAllister was paid on a salary basis if she regularly received a predetermined amount of pay, which constituted all or part of her compensation, and was not subject to reduction based on the quality or quantity of the work she performed. §§ 541.118(a), 541.212. In 1999, McAllister's annual salary exceeded $40,000, which was paid in semimonthly payments of $1873.18 and was all or part of her compensation.

On appeal, McAllister argues she was not paid on a salary basis because she was required to work "overtime." But Transamerica never disciplined her or docked her pay for missing work, or even threatened her with a dock in pay for missing work. See Auer v. Robbins, 519 U.S. 452, 461 (1997) (salary basis test denies exempt status only when employer's actual practice involves making deductions from pay or a

policy creates a significant likelihood of such deductions); see generally Boykin v. Boeing Co., 128 F.3d 1279, 1282 (9th Cir. 1997) ("[T]he focus of the regulations is to prohibit employers from claiming that their employees are compensated on a salary basis when the employees are subject to *deductions* in pay."); Haywood v. N. Am. Van Lines, Inc., 121 F.3d 1066, 1070 (7th Cir. 1997) ("The [DOL] regulations prohibit monetary discipline of exempt employees."); cf. Fife, 171 F.3d at 1175 (employees receiving predetermined amounts of pay each pay period which were not subject to reduction did not lose exempt status just because they were paid extra for overtime work). Nothing in the record shows McAllister's salary was in jeopardy of being reduced based on the quality or quantity of the work she performed. Thus, we agree with the district court that Transamerica has satisfied the first element.

### 2. Primary Duty

Transamerica must also prove McAllister's primary duty consisted of the performance of office work "directly related to management policies or general business operations of [Transamerica or its] customers." 29 C.F.R. §§ 541.2(a), 541.214(a). McAllister does not contest Transamerica's proof on this element, and the district court properly concluded Transamerica had met its burden.

### 3. Discretion and Independent Judgment

Finally, Transamerica must prove McAllister's performance of her primary duty included "work requiring the exercise of discretion and independent judgment." §§ 541.2(a), 541.2(e)(2), 541.214(a). McAllister's case rests on Transamerica's inability to prove this element. McAllister argues she did not exercise any discretion or independent judgment, but simply was skilled in following detailed claims manuals.

"In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered." § 541.207(a). The

-6-

term discretion and independent judgment "implies that the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance." Id. However, it "does not necessarily imply that the decisions made by the employee must have a finality that goes with unlimited authority and a complete absence of review. The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action." § 541.207(e)(1). Employees make decisions as to matters of significance when they "exercise authority within a wide range to commit their employer in substantial respects financially or otherwise." § 541.207(d)(2).

McAllister claims she had no discretion to disregard state law or the claims manuals, but she focuses on the wrong issue. See Murray v. Stuckey's, Inc., 50 F.3d 564, 570 (8th Cir. 1995) (recognizing companies have standardized procedures and policies and actively supervise managers, which may circumscribe, but not eliminate, discretion). The issue is not whether she had discretion to disregard state law or the claims manuals, but whether her primary duty included the exercise of discretion and independent judgment.

Just because McAllister was required to follow detailed manuals does not mean she did not exercise discretion and independent judgment. See Dymond v. United States Postal Serv., 670 F.2d 93, 95-96 (8th Cir. 1982) (holding postal inspectors were exempt administrative employees, even though they were required to follow procedures, standards and policies of a detailed field manual, because they still exercised discretion and independent judgment). The claims manuals themselves emphasized that a rule book could not guide most of the claims work, and employees must use "good common sense judgment." See, e.g., Haywood, 121 F.3d at 1073 & n.8 (stating employee's job description and deposition testimony showed she exercised discretion and independent judgment, even though the employee's supervisors reviewed her work and she was subject to guidelines, which told

employees to "just use [their] common sense" when dealing with certain problems). One Transamerica manual also directed employees to "bend over backward" to assist insureds and to seek ways to pay claims. McAllister also directed investigations of claims, and the claims manual gave McAllister discretion on whether to pursue a fraudulent claim investigation. McAllister clearly had the authority to approve contestable claims up to $150,000 and incontestable claims up to $250,000, and had disbursement authority up to $50,000, which are matters of significance as defined by the regulations. McAllister claimed she was effective in interpreting contract law and insurance statutes, which involved exercising her independent judgment.[2] McAllister independently had to compare and evaluate possible courses of action, and her decisions or recommendations went to matters of significance for the insurance company. We agree with the district court that McAllister's primary duties included the exercise of discretion and independent judgment.

McAllister claims the district court erroneously failed to consider certain DOL regulations when analyzing whether McAllister exercised discretion and independent judgment. We disagree, but recognize the DOL regulations caution against misapplying the term discretion and independent judgment by failing to distinguish it from simply using skills. 29 C.F.R. § 541.207(c)(1). For instance, "[a]n employee who merely applies his knowledge in following prescribed procedures or determining which procedure to follow . . . is not exercising discretion and independent judgment, . . . even if there is some leeway in reaching a conclusion." Id. "[O]rdinary inspection work" is a typical example. § 541.207(c)(2).

The regulations also caution against classifying an examiner or grader as exercising discretion and independent judgment because, "after continued reference to the written standards, or through experience, the employee acquires sufficient

---

[2]See, e.g., Olander v. State Farm Mut. Auto. Ins. Co., 317 F.3d 807 (8th Cir. 2003) (en banc) (where our own court is divided over how to interpret a contract).

knowledge so that reference to written standards is unnecessary. The substitution of the employee's memory for the manual of standards does not convert the character of the work performed to work requiring the exercise of discretion and independent judgment." § 541.207(c)(3). For examples of these types of employees, the regulations list graders of lumber, § 541.207(c)(4), personnel clerks who screen applications, § 541.207(c)(5), and comparison shoppers of retail stores who report to buyers, § 541.207(c)(6).

These regulations apply to employees who develop skills based on specific guidance and then simply apply those skills based on memory, without exercising any discretion or independent judgment. See Haywood, 121 F.3d at 1073 ("Many of these examples involve an employee who must apply a well-established, specific and constraining standard in assessing the situations he faces in his daily work."). McAllister did not simply apply specific and constrained standards, but exercised her discretion and made independent decisions based on what confronted her.

Finally, McAllister claims the district court failed to determine the percentage of time McAllister spent on discretionary activities. The short test for administrative employees does not require such a finding. See Dymond, 670 F.2d at 95 (employees "qualify for the administrative employee exemption if they meet the more liberal standard requiring that their duties merely 'include' work requiring the exercise of discretion and independent judgment.").[3]

_____

[3]If McAllister had contested the second element (i.e., whether McAllister's primary duty consisted of the performance of office work "directly related to management policies or general business operations of [Transamerica or its] customers"), the percentage of McAllister's time devoted to administrative duties may have been relevant. See Spinden v. GS Roofing Prods. Co., 94 F.3d 421, 427 (8th Cir. 1996) (concluding employee's primary duty satisfied second element, even though the district court, after a trial, found that eighty to ninety percent of the employee's tasks were routine and nondiscretionary); 29 C.F.R. §§ 541.103 (rule of thumb is that primary duty constitutes over fifty percent of an employee's time),

**B. Post-Judgment Motion**

In opposing Transamerica's summary judgment motion, McAllister submitted forty pages of e-mail evidence to the district court. The district court, in a detailed, 114-page opinion, considered all of McAllister's evidence and then granted summary judgment to Transamerica. McAllister then moved to file seven additional pages of e-mail evidence inadvertently omitted from her prior forty-page e-mail submission. The district court denied her motion, and we review this denial for an abuse of discretion. Peters v. Gen. Serv. Bureau, Inc., 277 F.3d 1051, 1057 (8th Cir. 2002). The district court stated the omitted e-mail was not admissible, and would not have changed the court's summary judgment ruling. On appeal, McAllister cites no authority to support her contention the district court abused its discretion. Based on the record, we find no abuse of discretion.[4]

**III. CONCLUSION**

Because McAllister was an administrative employee exempt from the FLSA's overtime requirements, we affirm the district court's entry of summary judgment in Transamerica's favor. We also affirm the district court's denial of McAllister's post-judgment motion.

---

541.206 (primary duty). Similarly, the percentage of McAllister's time devoted to the exercise of discretion and independent judgment may have been relevant if we had been called upon to apply the long test. § 541.2(b) (long test covers employee who "customarily and regularly exercises discretion and independent judgment").

[4]McAllister's motion appears to be a Rule 59(e) motion to alter or amend the judgment, which does not allow arguments or evidence to be presented after judgment when the argument or evidence could have been presented earlier. Fed. R. Civ. P. 59(e); Peters, 277 F.3d at 1057; Garner v. Arvin Indus., Inc., 77 F.3d 255, 258-59 (8th Cir. 1996) (affidavits not in record when district court made summary judgment ruling not allowed under Rule 59(e)). Regardless of the type of motion, nothing indicates the district court abused its discretion in denying McAllister's post-judgment motion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.