# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1352

_____

Marcie Guerrero,

        Plaintiff-Appellant,

    v.

J. W. Hutton, Inc.,

        Defendant-Appellee.

Appeal from the United States
District Court for the Southern
District of Iowa.

_____

Submitted: June 16, 2006
Filed: August 21, 2006

_____

Before BYE, LAY, and RILEY, Circuit Judges.

_____

BYE, Circuit Judge.

In November 2003, Marcie Guerrero filed suit in Iowa state court against her former employer, J.W. Hutton, Inc., claiming she was owed a bonus under the Iowa Wage Payment and Collection Act (IWPCA) and overtime under the Fair Labor Standards Act (FLSA). In January 2004, J.W. Hutton removed the case to federal court and counterclaimed for a breach of a non-compete agreement. The district

court[1] granted J.W. Hutton's motion for summary judgment on the IWPCA and FLSA claims. It then certified the case for appeal. We affirm.

I

Guerrero was hired by J.W. Hutton as a subrogation analyst in March 2002, and she signed a non-compete agreement as a condition of her employment. Her job required her to review client files and to make recommendations to her supervisors concerning potential settlement offers to close insurance claims. In reviewing offers, Guerrero would conduct asset searches to determine the solvency of the responsible party. Occasionally, Guerrero would investigate potential third-party liability.

J.W. Hutton utilizes a "flextime" policy, allowing employees make up absences of time between fifteen minutes and four hours long within the same pay period the absences occurred. Absences longer than four hours, however, must be taken using vacation or personal time. In order to account for each employee's hours, J.W. Hutton requires all employees–both salary or hourly–to document all vacation, sick, flex, and unexcused time spent away from work. Nothing in the written policy indicates whether J.W. Hutton would dock an employee's pay for failing to make up time off.

While employed with J.W. Hutton, Guerrero used flextime, as evidenced by several e-mail messages between her and her supervisors concerning scheduling and making up absences under the policy. No evidence shows J.W. Hutton actually docked Guerrero's pay for failing to make up time taken under this policy. On the contrary, one pay stub shows the opposite to be true–she was given her full pay despite not making up a one-hour absence.

---

[1]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

J.W. Hutton also has a bonus program available to eligible full-time employees at the end of each quarter. Generally, an employee is eligible if the person works "within the company's standard work ethic" and does nothing to "detrimentally affect[] the company (i.e. breaking the code of work ethics forthright in the employee handbook) at any time during the bonus quarter." The bonus program also states: "An employee must be employed through the last working day of the quarter to be eligible for the bonus." In 2003, the last working day of the second quarter was Monday, June 30.

According to J.W. Hutton President Julie Bitner, in the spring of 2003, she received several complaints regarding Guerrero releasing confidential information in her debt-collection attempts. On June 27, Bitner learned Guerrero interviewed for a job in Minneapolis, potentially in violation of her non-compete agreement. As a result, Bitner terminated Guerrero's employment and issued her a letter stating the termination was effective as of Friday, June 27. Because Guerrero was on vacation at the time, she did not receive the letter until she arrived for work on Monday, June 30. Guerrero was prepared to work on June 30, but there is no evidence she actually performed any work for J.W. Hutton on that day. Additionally, the district court noted while Guerrero's pay stub for the pay period including June 30 covered eleven working days, she was only paid for ten.

Guerrero did not receive a bonus for the second quarter of 2003. Her attorney sent J.W. Hutton a letter stating she was due the bonus because she worked "nearly the entire quarter." In response to this letter, the Bonus Review Committee met and determined Guerrero was ineligible for two reasons. First, her actions had detrimentally affected the company and violated the company's code of ethics. Second, she was not employed through the last working day of the quarter. Despite citing two reasons for the denial of Guerrero's bonus, J.W. Hutton contends either reason standing alone would be sufficient to support its decision.

II

A.  Jurisdiction

As an initial matter, we recognize certifications "under Rule 54(b) should neither be granted routinely nor as an accommodation to counsel." Hardie v. Cotter & Co., 819 F.2d 181, 182 (8th Cir. 1987) (citation omitted).  Rule 54(b) allows the district court to "direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."  Fed. R. Civ. Pro. 54(b).  We review the district court's decision to grant certification in this case for an abuse of discretion.  See Interstate Power Co. v. Kan. City Power & Light Co., 992 F.2d 804, 807 (8th Cir. 1993).

The district court certified this case for appeal after it determined no just reason for delay existed preventing Guerrero from appealing her claims under the IWPCA and the FLSA.  In light of the fact the disposition of this appeal will not impact the remaining claim before the district court, we find the district court did not abuse its discretion.  See In re Flight Transp. Corp. Sec., 825 F.2d 1249, 1251 (8th Cir. 1987) (finding no abuse of discretion in certifying a case for appeal when "there is no significant relationship between the adjudicated and unadjudicated claims").

B.  Standard of Review

With respect to the merits, we review the district court's grant of summary judgment de novo. Turner v. Gonzales, 421 F.3d 688, 694 (8th Cir. 2005). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c).  Under this review, we view the evidence

in the light most favorable to Guerrero, the non-moving party.  Lester E. Cox Med. Ctr., Springfield, Mo. v. Huntsman, 408 F.3d 989, 992 (8th Cir. 2005).  To warrant reversal, she "must show the existence of facts on the record which create a genuine issue" of material fact.  Id.

C.  Guerrero's Bonus Under the IWPCA

Guerrero first claims she was owed a bonus for the second quarter of 2003 under the IWPCA.  Under the IWPCA, an employer is required to "pay all wages due its employees," Iowa Code Ann. § 91A.3(1), and the term "wages" has been interpreted to include bonuses.  Runyon v. Kubota Tractor Corp., 653 N.W.2d 582, 585 (Iowa 2002) (citing Dallenbach v. Mapco Gas Prod., Inc., 459 N.W.2d 483, 488 (Iowa 1990)); see also PFS Distrib. Co. v. Raduechel, 387 F. Supp. 2d 1020, 1022 (S.D. Iowa 2005).  We must examine the terms of the employment contract to determine if Guerrero was improperly denied a bonus.  See PFS Distrib. Co., 387 F. Supp. 2d at 1022-23; see also Phipps v. IASD Health Serv. Corp., 558 N.W.2d 198, 202 (Iowa 1997) (examining the terms of a profit-sharing agreement to determine an employee's eligibility).

Guerrero challenges both reasons given by J.W. Hutton denying her bonus request.  First, she claims there exists a genuine issue of material fact as to whether her actions could be construed as detrimental to the company and in violation of the company's code of ethics.  Second, she contends she was employed on the last day of the quarter.  J.W. Hutton concedes a genuine issue of material fact exists with regard to the former of its proffered reasons.  Therefore, we limit our discussion to the latter.  Because the plain language of the bonus policy requires an employee to both act in an ethical manner and be employed as of the last day of the quarter, we can affirm the district court's grant of summary judgment if no issue of material fact exists regarding the applicability of either proffered reason.  See Lane v. Amoco Corp., 133 F.3d 676,

678 (8th Cir. 1998) (applying the "plain, unambiguous language" of an employee bonus agreement).

The bonus agreement at issue states: "[a]n employee must be employed through the last working day of the quarter to be eligible for the bonus." We find this language to be unambiguous. See Lane, 133 F.3d at 678 (applying unambiguous language in an employee bonus agreement requiring the employee be employed at the end of the year). The evidence establishes Guerrero was not employed by J.W. Hutton on June 30, the last day of the second quarter. Her termination letter is dated and effective as of June 27. Although Guerrero appeared at work on June 30, no evidence exists showing she performed any work on that day. Her contention that she was ready, willing, and able to work on June 30 is unavailing and undermines her argument. Additionally, in Guerrero's response to J.W. Hutton's statement of undisputed facts, she admitted "Bitner terminated Guerrero on June 27, 2003." Guerrero contends this admission merely reflects her understanding of Bitner's subjective intent. Assuming this to be true, it does not create a reasonable inference Guerrero was employed on June 30. The evidence also establishes Guerrero subjectively believed her termination was effective on June 27. Indeed, her attorney sent a letter to J.W. Hutton stating she was "terminated from her employment effective June 27, 2003," but entitled to a bonus because she worked "nearly the entire quarter." Finally, the undisputed evidence establishes Guerrero was not paid for working on June 30. Therefore, we affirm the district court on this issue.[2]

---

[2]We also find Guerrero's argument that she is due a prorated bonus without merit because the unambiguous policy language requires an employee to be employed (although not necessarily working) on the last day of the quarter. A prorated bonus is only available for an employee having excessive absences during the quarter. To read the contract as advocated by Guerrero would effectively allow all terminated employees to receive a prorated bonus, and this reading is not supported by the plain language of the contract.

D. Overtime Under the FLSA

Guerrero also claims she is entitled to overtime pay under the FLSA. See 29 U.S.C. § 207(a)(1) (2003) (requiring employers to pay overtime for employees who work more than forty hours in any work week). J.W. Hutton contends Guerrero is not due overtime pay because she was an exempt administrative employee. J.W. Hutton bears the burden of proving Guerrero is exempt. McAllister v. Transamerica Occidental Life Ins. Co., 325 F.3d 997, 999 (8th Cir. 2003).

Under the FLSA, employees are exempt if they are "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). Under the applicable regulations,[3] an administrative employee is one who is paid on a "salary . . . basis at a rate of not less than $250 per week . . . and whose primary duty consists of . . . the performance of office . . . work directly related to . . . general business operations of the employer . . ., where the performance of such primary duty includes work requiring the exercise of discretion and independent judgment." 29 C.F.R. § 541.214(a).[4] Thus, the test for determining if a person is exempt under this section requires the following showings: 1) the employee is paid at least $250 per week on a "salary basis"; 2) the employee's "primary duty consisted of the performance of office work 'directly related to management policies or general business operations of the employer'"; and 3) the employee's "performance of such primary duty included 'work requiring the exercise of discretion and independent judgment.'" See McAllister, 325 F.3d at 1000 (quoting 29 C.F.R. § 541.214(a)).

_____

[3] The regulations at issue were revised as of July 1, 2004. However, the 2003 regulations are applicable and cited throughout.

[4] 29 C.F.R. § 541.214 is referred to as the "short test" for employees who earn more than $250 per week. The "long test" is found in 29 C.F.R. § 541.2(a)-(e). Both parties agree the short test is applicable in this case.

Guerrero easily meets the second and third of these requirements. Neither party disputes her position involved office work relating to the general business operations of J.W. Hutton. As to the third prong, her work as a subrogation analyst involved the exercise of discretion and judgment because she was required to review case files, determine responsible parties, review settlement offers, and make recommendations based on her findings. See id. at 1001 (holding the position of an insurance claims examiner involved the exercise of discretion and judgment).

Thus, because the parties agree Guerrero made at least $250 per week, the only issue on appeal is whether she was paid on a "salary basis." The regulations provide:

> [a]n employee will be considered to be paid "on a salary basis" within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, *which amount is not subject to reduction because of variations in the quality or quantity of the work performed*.

29 C.F.R. § 541.118(a) (emphasis added); see also Fife v. Harmon, 171 F.3d 1173, 1175 (8th Cir. 1999) (holding the grant of overtime pay does not necessarily prove an employee is not salaried provided the employee's pay is not subject to a reduction for the reasons stated in the regulations). A salaried employee's pay can only be deducted "when the employee absents himself from work *for a day or more* for personal reasons, other than sickness or accident." 29 C.F.R. § 541.118(a)(2) (emphasis added). Essentially, Guerrero argues she was not salaried because J.W. Hutton either actually docked her pay or threatened to dock her pay based on absences of less than one full day. See Auer v. Robbins, 519 U.S. 452, 461 (1997) (holding the salary basis test turns on whether the employer's actual practice involves deducting pay or whether the employer has a policy creating a likelihood pay would be deducted for partial-day absences).

Guerrero's argument, however, is without merit because no evidence exists showing J.W. Hutton actually docked pay for time lost or threatened to do so if her absences under the flextime policy were not made up. McAllister, 325 F.3d at 1000 (holding plaintiff was paid on a salary basis because nothing "in the record shows [the plaintiff's] salary was in jeopardy of being reduced based on the quality or quantity of the work she performed"); see also Nelson v. Ellerbe Becket Constr. Serv., Inc., 283 F. Supp. 2d 1068, 1078 (D. Minn. 2003) (determining plaintiff was paid on a salary basis because the employer never docked or threatened to dock the plaintiff's pay). Guerrero bases her argument on J.W. Hutton's flextime policy, noting the requirements to keep track of her hours and make up any time missed.

At least two other circuits have explicitly held an employer's requirement for an employee to make up time missed does not automatically transform the employee from salaried to hourly, provided the employee's pay was not reduced for the time lost. In Cowart v. Ingalls Shipbuilding, Inc., 213 F.3d 261 (5th Cir. 2000), the Fifth Circuit held:

> [t]here is no support in the case law for the proposition that requiring salaried employees to make up time missed from work due to personal business is inappropriate. Although the salary basis regulation prohibits deductions from an employees's [sic] salary for personal absences of less than a day, the regulation does not prohibit an employer from requiring an employee to make up the time he misses.

Id. at 265; see also Renfro v. Ind. Mich. Power Co., 370 F.3d 512, 516 (6th Cir. 2004) ("An employer may require exempt salaried employees to make up for time missed from work due to personal business."); Martin v. Ind. Mich. Power Co., 381 F.3d 574, 579 (6th Cir. 2004) ("It does not matter that [the plaintiff] must make up partial-day absences or that [the plaintiff's] hours are prescribed and he must obtain approval from his supervisors to vary his hours."). We agree the regulations do not prohibit

employers from requiring employees to work a specific number of hours per week and track their time to ensure they have worked the requisite number of hours.

No evidence shows J.W. Hutton actually docked Guerrero's pay for failing to make up partial-day absences or that the flextime policy created a substantial likelihood pay would have been docked if Guerrero failed to work the requisite forty hours during a given pay period. The e-mail correspondence between Guerrero and her supervisors simply demonstrates Guerrero was required to work forty-hour weeks and to make up partial-day absences. The messages do not suggest Guerrero's pay would be reduced if she did not work the requisite number of hours. To the contrary, one pay stub demonstrates Guerrero was paid her full salary despite not making up one hour in the pay period. Therefore, we affirm the district court on this issue.

### III

Accordingly, we affirm.

LAY, Circuit Judge, dissenting.

Credibility is the matrix of the factual dispute in this case. Specifically, genuine issues of material fact remain on Guerrero's IWPCA claim that preclude summary judgment.

Both sides concede that if Guerrero actually worked through June 30, 2003 – the last day of the second fiscal quarter – she would be entitled to receive a bonus pursuant to company policy and Iowa law. In support of her position, Guerrero references statements she made in her sworn affidavit. In it, Guerrero contends that she "came to work the last day of the quarter" and was further paid for services rendered on that day.

-10-

The majority affords undue weight to two alleged admissions to support its ruling. The majority asserts that Guerrero conceded that she was terminated on June 27 when, in response to paragraph fourteen of J.W. Hutton's statement of undisputed facts, she admitted that Bitner terminated her on June 27, 2003. However, Guerrero was merely setting forth a stipulation concerning Bitner's subjective belief. The alleged admission in paragraph fourteen must be read in light of Guerrero's denial set forth in paragraph nineteen. In paragraph nineteen, Guerrero disputed that she was fired on June 27 and asserted instead that she came to work on June 30 and was paid for work performed that day. Interpreting the facts in the light most favorable to Guerrero, and drawing all reasonable inferences in Guerrero's favor, as we must, I am compelled to believe the alleged admission in paragraph fourteen was merely a stipulation to Bitner's subjective intent. Moreover, there are additional factual disputes in this case that make summary judgment improper.

The majority cites a demand letter written by counsel for Guerrero which states that Guerrero "was terminated from her employment effective June 27, 2003." Although this statement qualifies as an agency admission and could properly be introduced against Guerrero at trial, it is not conclusive evidence and may easily be explained. <u>Murrey v. United States</u>, 73 F.3d 1448, 1455 (7th Cir. 1996) (noting that an extrajudicial admission is not conclusive evidence); <u>see</u> <u>also</u> <u>Stolte v. Larkin</u>, 110 F.2d 226, 233 (8th Cir. 1940). The weight this evidence should be afforded is especially questionable considering the substance of the letter flatly contradicts Guerrero's own sworn statements. If Guerrero was terminated on June 27, 2003, then why did she show up for work on June 30?

Given the obvious credibility issues involved, I cannot agree that summary judgment is the proper venue to decide the merits of Guerrero's IWPCA claim. I would therefore reverse on this issue and submit the questions of fact to a jury for final resolution.

_____

-11-